Eric Slocum Sparks
Arizona State Bar No. 11726
LAW OFFICES OF ERIC SLOCUM SPARKS, P.C.
110 South Church Avenue, #2270
Tucson, Arizona 85701
Telephone (520) 623-8330
Facsimile (520) 623-9157
eric@ericslocumsparkspc.com

Attorney for Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re: | |
|---|---|
| SAGUARO RANCH DEVELOPMENT CORPORATION, | **Jointly Administered Under** Case No. 4:09-bk-02490-EWH Chapter 11 |
| Debtor. | |
| In re: | |
| PCC INVESTMENTS, LLC, | Case No. 4:09-bk-02484-EWH Chapter 11 |
| Debtor. | |
| In re: | |
| SAGUARO GUEST RANCH MANAGEMENT CORPORATION, | Case No. 4:09-bk-02489-EWH Chapter 11 |
| Debtor. | |
| In re: | |
| SAGUARO RANCH INVESTMENTS, LLC, | Case No. 4:09-bk-02492-JMM Chapter 11 |
| Debtor | |
| In re: | |
| SAGUARO RANCH REAL ESTATE CORPORATION, | Case No. 4:09-bk-02494-EWH Chapter 11 |
| Debtor. | |

# **DECLARATION OF STEPHEN D. PHINNY**

I, STEPHEN D. PHINNY, do hereby declare, under penalty of perjury:

1. I am the President and Chief Executive Officer of Debtor in Possession Saguaro Ranch Development Corporation; Saguaro Ranch Investments, L.L.C.; PCC Investments, L.L.C.; and Saguaro Ranch Real Estate Corporation (collectively hereinafter the "Debtors"), and have held such position in excess of 5 years. From serving in this capacity, I have detailed knowledge of and experience with the business and financial affairs of the Debtors.

2. As the President and CEO, I am the Officer of the Debtors responsible for devising and implementing the Debtors business plans and strategies and overseeing the Debtors financial, operational and other business affairs. In addition, I am responsible for supervising the maintenance of the Debtors books and records. Moreover, in my capacities as the President and CEO of the Debtors, I am fully familiar with the Debtors reorganization process (the "Reorganization") and have been engaged in (a) the development, negotiation and implementation of various strategic alternatives for Reorganization, reducing or modifying the Debtors indebtedness: (b) supervising of the document preparation necessary to implement the Reorganization; and (c) consultation on a periodic basis with all persons and entities necessary or incidental to such process.

3. On February 13, 2009 (the "Petition date"), the Debtors each voluntarily filed Petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 USC Sections 101 et. seq. (the "Bankruptcy Code") in an effort to preserve and maximize the value of their Chapter 11 Estates.

4. The Debtors have, and intend to continue, to operate their business and to manage their properties as Debtors in Possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

5. I have been advised by counsel that this Court has jurisdiction over these cases pursuant to 28 USC Sections 157 and 1334. In addition, I have also been advised by counsel that venue of these cases is proper in this District pursuant to 28 USC Sections 1408 and 1409.

6. No request has been made for an appointment of a Trustee or Examiner, and the Debtors continue to operate their businesses and manage their properties as Debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

To provide the liquidity necessary to insure the proper administration of these cases, the Debtors have contemporaneously herewith filed a Motion (the "DIP Motion") for entry of a proposed interim Order (the "Interim Order") and a Final Order (the "Final Order") that, if granted, will among other things:

    a. Authorize the Debtors to obtain or guarantee obligations in respect of a senior secured, super priority, credit facility of up to $12,325,000 in aggregate principal amount as set forth in the DIP Loan Documents;

    b. Approve the terms of, and authorize the Debtors to execute and deliver, and perform under, the DIP Loan Documents and perform such other and further access may be required in connection with the DIP Loan Documents;

    c. Authorize the Debtors to grant liens on all of the DIP collateral which shall be senior to the primed liens and super priority administrative claims having recourse to all Pre-Petition and Post-Petition property of the Debtors Estate;

    d. Authorizes the use of cash collateral;

    e. Vacates the Automatic Stay to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this interim Order;

    f. Schedules of Final Hearing; and

g. Waves any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of the Interim Order.

7. Approval of the DIP Loan Documents and use of cash collateral will provide the Debtors with immediate and ongoing access to borrowing availability to pay their current and ongoing operating expenses, including Post-Petition wages and salaries and utility and vender costs, and additionally to complete improvements to the subject property necessary to increase the value of same. The inability to obtain the DIP facility would (i) result in immediate and irreparable harm to the Debtors businesses, (ii) deplete going concern value, and (iii) jeopardize the Debtor's ability to reorganize and maximize value. The credit provided under the DIP facility is necessary to preserve and enhance the value of the Debtor's Estates for the benefit of all stakeholders. Additionally, the availability of credit under the DIP facility will provide confidence to the Debtor's Venders and will be viewed favorably by prospective buyers of the Debtors employees thereby promoting a successful reorganization. Accordingly, the timely approval of the relief requested in the DIP Motion is imperative.

8. Due to Debtors deceasing revenues brought on by, among other things, economic factors causing both difficulties in obtaining credit and declines in the real estate market, the Debtors were faced with problems relating to its credit which impaired its ability to pay its Creditors.

9. The Debtors need to complete the infrastructure and construction improvements upon the subject property as detailed in the budget. Specifically, the Debtors need to complete the infrastructure of residential lots within the property, need to complete construction of a Guest Ranch complex and are in need of funding for marketing of the subject property. The need for an infusion of funds is immediate and critical.

10. The Debtors commenced the Chapter 11 Cases in order to address their liquidity shortfalls, preserve and maximize its business as a going concern, for the benefit of all

stakeholders, restructure and reorganize its business affairs and develop a Reorganization Plan.

11. With the DIP facility requested in this Motion, the Debtors will resolve their liquidity problems and dramatically improve their profitability for the benefit of their Creditors, Members and Shareholders. The Debtors have exhausted their options for addressing their liquidity issues. Thus, without the DIP facility, the Debtors do not have sufficient available resources of working capital and financing to operate their businesses, complete the infrastructure and construction necessary for a successful reorganization. The Debtors need approval of the DIP facility to, among other things, satisfy costs and expenses in connection with the property, other routine operating expenses such as payroll, contractor costs and other obligations. Without the proposed source of post-petition financing, the Debtors will be forced to discontinue their operations. The DIP facility and use of cash collateral will avoid such a result and provide a basis upon which the Debtors can continue ordinary course operations, complete necessary infrastructure and construction for enhancing the value of the property, and commence marketing efforts for sale of residential lots to prospective buyers. In so doing, the Debtors will be able to successfully reorganize, make repayment of the DIP facility, and make payment to Creditors pursuant to a Plan of Reorganization.

12. Access to such financing will provide the Debtors contractors, homeowners, customers and vendors with the needed assurance that the Debtors will be able to continue conducting their business in the ordinary course without ceasing operation, and will be able to complete the necessary infrastructure and construction. In the absence of approval of the DIP facility, the Debtors will have no choice but to discontinue operations, resulting in immediate and irreparable harm to the Debtors and their Estates.

13. Prior to the Petition date, the Debtors sought financing proposals from several sources. The Debtors, with the help of their advisors, contacted multiple parties and received no interest from any potential financing source. The Debtors have been unable to obtain

post-petition financing in the form of unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code, unsecured credit allowable under Sections 364(a) and 364(b) of the Bankruptcy Code, or secured credit pursuant to Section 364(c) of the Bankruptcy Code on terms and conditions more favorable to the Debtor's Estate than those offered by the DIP facility. In light of the Debtor's search, and given the current credit markets, no lender is be willing to loan new money to the Debtors on terms more favorable to the Debtors than the terms of the DIP facility.

14. After the Petition date, the Debtors have sought to obtain financing from multiple sources, including institutional lenders as well as private investors. All institutional and regulated lenders turned down the request for financing. The Debtors were able to obtain letters of interest from three non-institutional sources, each of which contained similar terms and conditions. Through extensive research and background checks of the individuals and entities involved, the current DIP facility was selected due to the reputation, loan pricing, western U.S. location and track record of the lender.

15. After reviewing the proposal submitted and engaging in vigorous arms length and good faith negotiations, the Debtors determined, in the exercise of their business judgment, that the financing offered by the DIP facility is in the best interest of the Debtor's Estates. The Debtors believe that the terms of the DIP facility are fair and reasonable, reflect the Debtors exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

16. The Debtors believe the pre-petition lenders will be adequately protected by an equity cushion in the subject property, which equity cushion will increase as a result of the completion of infrastructure and construction utilizing the DIP facility. The Debtors believe this adequate protection is fair and reasonable under the circumstances, and reflect the Debtors exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

|                                    | /s/ Stephen D. Phinny          |
|                                    | STEPHEN D. PHINNY              |

Dated: February 11, 2010

LAW OFFICES OF
*ERIC SLOCUM SPARKS, P.C.*

/s/ Sparks AZBAR #11726
Eric Slocum Sparks
Attorney for Debtor

COPIES of the foregoing
Mailed/delivered/faxed
February 11, 2010 to:

Ilene J. Lashinsky
Christopher J. Pattock
UNITED STATES TRUSTEE
230 N. First Ave. #204
Phoenix, Arizona 85003

Benjamin Bauer, Esq.
Fennemore Craig
One South Church Ave
Tucson, AZ 85701
*Attorney/s for Kennedy Funding, Inc.*

Official Committee of Unsecured Creditors:

    Arizona Restaurant Supply, Inc.
    Attn: Tom Carr
    6077 N. Travel Center Drive
    Tucson, Arizona 85741

    Linthicum Corp.
    Attn: Clayton Boop
    20789 N. Pima Road, #250
    Scottsdale, Arizona 85255

    Rick Engineering Company, Inc.
    Attn: Paul Iezzi
    3945 E. Fort Lowell Road, #111
    Tucson, Arizona 85712-1046

    Three Architecture, Inc.
    Attn: Jack Baines
    4040 N. Central Expressway, #1200

```
         Dallas, TX 75204

         Earth-Scrapes Excavating, Inc.
         Attn: Jody Mott
         P.O. Box 69576
         Oro Valley, AZ 85737
```

Terri A. Roberts, Esq.
German Yusufov, Esq.
PIMA COUNTY ATTORNEY'S OFFICE
32 North stone Avenue
Suite 2100
Tucson, AZ 85701
Attorneys for Pima County

Neil Eckel, Esq
DURAZZO & ECKEL, P.C.
45 North Tucson Boulevard
Tucson, Arizona 85716
Attorneys for Amanti Electric, Inc.


Alan M. Levinsky
BUCHALTER NEMER
16435 North Scottsdale Road
Suit 440
Scottsdale, Arizona 85254
Attorneys for Ford Motor Credit Company LLC

Dewain D. Fox, Esq.
FENNEMORE CRAIG, PC
3003 N. Central Ave.
Suite 2600 Phoenix, AZ 85012
Attorney for Kennedy Funding (SGRMC)

Michael W. Baldwin, Esq.
LAW OFFICE OF MICHAEL BALDWIN, PLC
P.O. Box 35487
Tucson, AZ 85740-5487
Attorney for: Theresa Chamberlain; Steven Blomquist;
         Sharyl Cummings and Timothy Blowers

Robert J. Spurlock, Esq.
BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
2901 North Central Avenue
Suite 100
Phoenix, AZ 85012
Attorney for Deere & Company

Linda Boyle
10475 Park Meadows Drive

Suite 400
Littleton, CO 80124
Representing TW Telecom Inc.

Scott D. Gibson, Esq.
GIBSON, NAKAMURA & GREEN, P.L.L.C.
2329 North Tucson Boulevard
Tucson, AZ 85716
Attorney for Katherine B. Phinny

George O. Krauja
Fennemore Craig, PC 1 S. Church Ave.
Suite 1000
Tucson, AZ 85701-1627
Attorneys for Kennedy Funding, Inc.
And Anglo-American Financial, LLC

Kevin J. Blakely, Esq.
GAMMAGE & BURNHAM, P.L.C.
Two North Central Avenue
18th Floor
Phoenix, AZ 85004
Attorneys for Arizona Labor Force, Inc.

Daniel R. Warner, Esq.
LAW OFFICES OF J. PHILLIP GLASSCOCK, P.C.
13430 North Scottsdale Road
Suite 106
Scottsdale, AZ 85254
Attorney for Mobile Mini, Inc.

Gerard R. O'Meara, Esq.
GUST ROSENFELD, PLC
1 South Church Avenue
Suite 1900
Tucson, AZ 85701-1627
Attorney for Tapestry Properties III, L.L.C.

**\*All parties in interest on the Master Mailing Matrices**

/s/     T. Fontes