Fennemore Craig, P.C.
George O. Krauja (No. 10964)
One South Church Avenue, Suite 1000
Tucson, AZ 85701-1627
Telephone: (520) 879-6800
Email: gkrauja@fclaw.com

Fennemore Craig, P.C.
Laurel E. Davis (Nevada Bar No. 3005)
300 South Fourth Street, Suite 1400
Las Vegas, NV 89101
Telephone: (702) 692-8000
Email: ldavis@fclaw.com

Attorneys for Kennedy Funding, Inc.
and Anglo-American Financial, LLC

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>SAGUARO RANCH DEVELOPMENT CORPORATION,<br><br>Debtor. | Case No. 4:09-bk-02490-EWH<br>**(Jointly Administered)**<br>Chapter 11 |
| In re:<br>PCC INVESTMENTS, LLC,<br><br>Debtor. | Case No. 4:09-bk-02484-EWH |
| In re:<br>SAGUARO GUEST RANCH MANAGEMENT CORPORATION,<br><br>Debtor. | Case No. 4:09-bk-02489-EWH |
| In re:<br>SAGUARO RANCH INVESTMENTS, LLC,<br><br>Debtor. | Case No. 4:09-bk-02492-JMM |
| In re:<br>SAGUARO RANCH REAL ESTATE CORPORATION,<br><br>Debtor. | Case No. 4:09-bk-02494-EWH<br>**KENNEDY FUNDING AND ANGLO-AMERICAN FINANCIAL'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY REGARDING DEBTORS' REAL PROPERTY AND OTHER COLLATERAL SECURING DEBTS OWED TO LENDER** |

2293816

Pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2), secured creditors, Kennedy Funding, Inc. and Anglo-American Financial, LLC (collectively "Kennedy Funding") hereby file their <u>Motion for Relief from the Automatic Stay Regarding Debtors' Real Property and Other Collateral Securing Debts Owed to Lender</u> (the "Motion"). Kennedy Funding makes and bases this Motion upon the following Memorandum of Points and authorities, Kennedy Funding's objection to the Debtors' DIP financing motion (Docket No. 217) and the previously filed Declarations of Kevin Wolfer (Docket Nos. 218-219) (the "Wolfer Declaration") and Gladstone E. Gregg, MAI (Docket No. 220) (the "Gregg Declaration"), the facts and arguments of which are incorporated herein by reference, the exhibits, pleadings, papers and other records on file in this matter, the argument and any further evidence presented to this Court at the time of the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I. PRELIMINARY STATEMENT.

Kennedy Funding is a grossly undersecured creditor holding a claim in excess of $33 million, secured by Collateral worth $14.7 million. No principal payments have been made on this loan since June 3, 2008, and no interest payments have been made since October 28, 2008. Kennedy Funding is entitled to relief from stay for lack of adequate protection, and because there is no equity in the Collateral and the Collateral is not necessary to an effective reorganization, because the Debtor's Plan filed March 1, 2010 provides no possibility of a successful reorganization within a reasonable time. This Court should enter an Order granting Kennedy Funding relief from stay to proceed with all of its contractual and state law rights and remedies against the Debtors.

### II. PROCEDURAL HISTORY AND RELEVANT FACTS.

#### A. Jurisdiction, Venue and Procedural History

1. This Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G). Venue is appropriate under 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms not defined herein are defined later in the Motion.

2293816

FENNEMORE CRAIG, P.C.
TUCSON

2. The statutory predicate for the relief requested herein is 11 U.S.C. §§ 362(d)(1) and (d)(2). Rule 4001(a) of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4001-1 also govern this Motion.

3. On February 13, 2009, the Debtors filed voluntary Chapter 11 cases in the Bankruptcy Court for the District of Arizona (the "Court"). The Debtors' cases are currently being jointly administered under Case No. 4:09-bk-02490-EWH, and the Debtors are currently operating their businesses as debtors-in-possession.

4. A creditors committee has been appointed in these Chapter 11 cases. The Committee recently has employed counsel (Docket No. 231).

5. On February 8, 2010, the Debtors filed their Motion Seeking Final Orders: (1) Authorizing Debtors to Obtain Post-Petition Financing; (2) Authorizing Debtors to Utilize Cash Collateral; (3) Making a Finding of Adequate Protection to Pre-Petition Secured Lender; and (4) Scheduling Final Hearings (the "DIP Financing Motion") (Docket No. 199).

6. On February 24, 2010, the Court scheduled an April 2, 2010 evidentiary hearing to determine valuation because there is a significant dispute with respect to the value of the Collateral (the Debtors valuation is $64 million, Kennedy Funding's valuation is $14.7 million).

7. The Court ordered the Debtors to file a Disclosure Statement and Plan by March 1, 2010, or face dismissal of these cases (Doc. 198). On March 1, 2010, the Debtors filed their disclosure statement (the "Disclosure Statement")[2] and a proposed plan of reorganization (the "Plan").[3] The Plan is based upon the assumption that the Debtors' DIP Financing Motion will be approved. The Debtors have not obtained a hearing for approval of their Disclosure Statement.

---

[2] The Disclosure Statement fails to provide "adequate information" as required under 11 U.S.C. § 1125 for a variety of reasons, including, but not limited to, its failure to disclose the $14,700,000 valuation of the Collateral conducted by Kennedy Funding's appraiser. Kennedy Funding intends to file a separate objection to the Disclosure Statement.

[3] As will be discussed in more detail below, the Plan is unconfirmable

FENNEMORE CRAIG, P.C.
TUCSON

2293816

**B.  The Debtors' Loan With Kennedy Funding.**

4.  On or about December 28, 2005, Debtors Saguaro Ranch Investments, LLC and Saguaro Ranch Development Corporation obtained a loan from Kennedy Funding in the maximum principal sum of $50 million (the "Loan"). (*See Wolfer Declaration* at ¶¶ 1 and 3). The Loan is secured by, in relevant part, the Debtors' real property (the "Real Property" and together with all other security interests, the "Collateral") (*See Wolfer Declaration* at ¶ 4).

**C.  The Debtors' Default on the Loan.**

5.  The Note[4] and Loan require monthly interest payments. *Id.* at ¶¶ 4-7.

6.  The Debtors last made a partial payment of interest of $100,000 on October 28, 2008, and last made a partial payment of principal of $150,000 on June 3, 2008. After those payments, the Debtors have not made any payments on the Note and Loan, and they have failed to pay the Note in full when it matured on December 31, 2008. The Debtors' available financial disclosures reveal post-petition losses in the amount of $30,000 to $60,000 each month, and they have not sold any property for nearly two years. As a result, the Debtors do not appear capable of making any payments towards any loan. *Id.* at ¶¶ 8, 9, 12.

**D.  The Outstanding Balance Owed on the Loan.**

7.  As of January 31, 2010, Kennedy Funding is owed **$33,944.874**, consisting of $23,899,764 in principal, $188,457 in costs to be added to principal, $5,673,998 in interest, $4,182,665 additional interest at the default rate (exclusive of default rates, foreclosure fees, attorneys fees, other late charges, and costs). Interest accrues at the rate of $301,103 per month (non-default rate) or $501,838 per month (default rate). *Id.* at ¶¶ 10, 11.

**E.  The Debtors Have No Equity in the Collateral.**

8.  In February 2010, Gladstone E. Gregg of CB Richard Ellis Valuation

---

[4] Terms are used herein as defined in the Wolfer Declaration. The Loan documents are exhibits to the Wolfer Declaration, which are incorporated herein by reference.

FENNEMORE CRAIG, P.C.
TUCSON

2293816

and Advisory Services ("CBRE") prepared a Summary Appraisal Report (the "Appraisal Report"), dated February 10, 2010 of the Collateral (*see Gregg Declaration*, at Exhibit 1). *Id.* at 4.

9. **The Appraisal Report establishes an "As-Is" Value of $14,700,000 as of February 4, 2010,** based on its highest and best use, which is to hold as a speculative investment, with a long term outlook for development as a mixed use master planned community when economic conditions justify. *Id.* at 4.

### F. Debtors Have Failed to Provide Adequate Protection.

10. As set forth above and in Kennedy Funding's objection to the DIP Financing Motion (Docket No. 217), the contents of which are incorporated herein by reference, the Collateral has a value of approximately $14.7 million, which fails to provide Kennedy Funding with any adequate protection.[5]

## III. LEGAL ANALYSIS.

### A. "Cause" Exists to Lift the Automatic Stay under Section 362(d)(1)

Section 362(a) of the Bankruptcy Code bars "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1). Section 362(d)(1) of the Bankruptcy Code, however, provides that the Court "shall grant relief from the stay ... for cause, including the lack of adequate protection...." 11 U.S.C. § 362(d)(1). "'Cause' is not clearly defined in the Bankruptcy Code: its existence must be determined on a case-by-case basis in the court's discretion." *Cedar Funding, Inc. v. Bach (In re Bach)*, 2007 Bankr. LEXIS 50, at *9-10 (Bankr. D. Ariz. Jan. 5, 2007) (unpublished) (a copy of is attached as **Exhibit A**). The debtor carries the burden to prove that "cause" does not exist to lift the stay. *See* 11 U.S.C. § 362(g). *See also Gauvin v. Wagner (In re Gauvin)*, 24 B.R. 578, 580 (B.A.P. 9th Cir. 1982) ("It is ... clear that §

---

[5] As discussed in Kennedy Funding's Objection to the DIP Financing Motion, the Debtors do not even have an actual commitment of DIP Financing because the proposed DIP Lender is allowed to withdraw its proposed financing proposal at any time within its sole discretion.

FENNEMORE CRAIG, P.C.
TUCSON

2293816

362(g) puts the burden on the debtor in (d)(1) to prove absence of cause...."). "[T]he debtor retains the burden of proving lack of cause under § 362(d)(1) even where the debtor asserts that equity furnishes adequate protection." *Id.*

In their DIP Financing Motion, the Debtors assert that an alleged equity cushion in the Real Property provides Kennedy Funding with all the adequate protection it needs. This is simply incorrect. As set forth above, the value of the Collateral is approximately $14.7 million. Therefore, Kennedy Funding is a grossly undersecured creditor who has been provided no adequate protection. As a result, "cause" exists under section 362(d)(1) to lift the automatic stay. *See Friedman v. P+P, LLC (In re Friedman)*, 2008 Bankr. LEXIS 4307 (Bankr. D. Ariz. Sept. 12, 2008) (lifting the automatic stay for "cause" where, among other things, the value of the collateral was diminishing "by virtue of accruing interest [and] fees") (unpublished) (a copy is attached as **Exhibit B**); *Cedar Funding*, 2007 Bankr. LEXIS 50, at *12 ("[A]s there is no equity in the Property for the benefit of the unsecured creditors, cause exists to lift the stay so that secured creditors, whose interests are eroding daily, can protect themselves through foreclosure.").

The Debtors' failure to provide Kennedy Funding with adequate protection is merely a continuation of their pre-petition failure to make full and timely payments. As set forth above, the Debtors have failed to make any payments under the Note and the Loan since a partial payment of interest in October 2008. As a result, "cause" exists to lift the automatic stay under section 362(d)(1). *See Sun Valley Ranches, Inc. v. Equitable Life Assurance Society of the U.S. (In re Sun Valley Ranches, Inc.)*, 823 F.2d 1373, 1376 (9th Cir. 1987) (lifting the automatic stay for "cause" where, among other things, the debtor failed to pay "either interest or principal on its loan for four years."); *Friedman*, 2008 Bankr. LEXIS 4307 (lifting the automatic stay for "cause" where, among other things, the debtors failed to make any payments, including adequate protection payments, to its secured lenders since the petition date).

The monthly operating reports tardily filed by the Debtors, which reveal $0 in lot sales revenue and continuing monthly losses in the restaurant, reflect the Debtors'

FENNEMORE CRAIG, P.C.
TUCSON

2293816

consistent pattern of non-payment will continue well into the future unless the Court grants Kennedy Funding relief from the automatic stay to protect its interests.[6] "The Debtors have suffered no risks through such non-payment, and have shifted it all to" Kennedy Funding. *Friedman*, 2008 Bankr. LEXIS 4307, at *5. "This is inequitable, and has resulted in less than positive progress in this case." *Id.* "Too much time has already passed to allow the Debtors more time to hold [Kennedy Funding] at bay." *Id.* at *6. "It is time to shift the burden of true performance to the Debtors, not their creditors." *Id.* "Cause" exists under section 362(d)(1) to lift the automatic stay. *See Sun Valley Ranches*, 823 F.2d at 1376 (lifting the stay for "cause" where, among other things, the debtor continued to incur "steady losses").

Although the Debtors have enjoyed an extended exclusivity period, the Debtors have failed wholly to file a plan of reorganization that provides for a successful reorganization within a reasonable period of time. Instead, the paltry numbers reflected on the Debtors' monthly operating reports, as well as the facially unconfirmable Plan on file, convey the impression the Debtors have simply done little, if anything, to coordinate and consolidate the various moving parts required to put together a feasible plan of reorganization. This further provides "cause" under section 362(d)(1) to lift the automatic stay. *See Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.)*, 171 B.R. 71, 76 n.3 (B.A.P. 9th Cir. 1994) ("The fact that [the debtor] was given thirteen months to confirm a plan and has failed to do so after two plans were filed would constitute 'cause' under § 362(d)(1)."); *Friedman*, 2008 Bankr. LEXIS 4307 (lifting the automatic stay for "cause" where, among other things, the debtors failed to confirm a plan of reorganization within eleven months).

. . .

. . .

. . .

---

[6] Remarkably, the Debtors' Plan confirms the Debtors' intention to avoid its payment obligations to Kennedy Funding by proposing not to pay its indebtedness to Kennedy Funding until 2017.

FENNEMORE CRAIG, P.C.
TUCSON

2293816

## B. The Automatic Stay Should be Lifted under Section 362(d)(2).

The automatic stay should also be lifted because the Debtors have no equity in the Real Property and it is not necessary to an effective reorganization. Section 362(d)(2) of the Bankruptcy Code provides:

> (d) [T]he court shall grant relief from the stay . . . such as by terminating, modifying, or conditioning such stay . . . with respect to a stay of an act against property under subsection (a) of this section, if –
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2). Both requirements for relief under Section 362(d)(2) of the Bankruptcy Code are satisfied.

### 1. The Debtors have no Equity in the Collateral

"[E]quity refers to the differences between the value of the property and all encumbrances upon it." *Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984). As set forth in the Gregg Declaration, the Collateral has a value of approximately $14.7 million. Kennedy Funding's security interest in the Collateral of more than $33 million yields negative equity in excess of $18 million. As a result, the first prong of section 362(d)(2) is satisfied.

### 2. The Collateral is not Necessary to an Effective Reorganization.

Since the Debtors do not have any equity in the Real Property, the dispositive question is whether the Collateral is necessary to an effective reorganization. "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*." *United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988) (emphasis in original). "This

FENNEMORE CRAIG, P.C.
TUCSON

2293816

- 8 -

means ... that there must be a reasonable possibility of a successful reorganization within a reasonable time." *Id.* at 376 (internal quotations and citations omitted). In this regard, "[a] court must test whether the things which are to be done after confirmation can be done as a practical matter" or whether they are "so unreasonable that reorganization is rendered unrealistic." *Ambanc La Mesa Ltd. P'ship v. Resolution Trust Corp. (In re Ambanc La Mesa Ltd. P'ship)*, 1993 U.S. App. LEXIS 12828, at *4-5 (9th Cir. May 19, 1993) (unpublished) (internal quotations and citations omitted) (a copy is attached hereto as **Exhibit C**). *See also Sun Valley Newspapers*, 171 B.R. at 75 (quoting *John Hancock Mut. Life Ins. v. Route 37 Bus. Park Assoc.*, 987 F.2d 154, 157 (3d Cir. 1993)) ("[T]he 'effective reorganization' requirement enunciated by the Supreme Court ... requires a showing by a debtor ... that a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed.") (internal quotations omitted). "Courts usually require the debtor to do more than manifest unsubstantiated hopes for a successful reorganization." *Sun Valley*, 171 B.R. at 75.

### (a) The Plan is Not Feasible

Indeed, the Debtors' proposed plan does nothing more than manifest unsubstantiated hopes for a successful reorganization. The Debtors' Plan is simply not feasible and fails to satisfy the confirmation standards required under 11 U.S.C. § 1129. The Plan simply provides a generic statement that "Debtor shall fund its plan of reorganization from property sales and income from restaurant operations and possible capital contributions, if required and/or approval by this Court of the DIP Financing." Plan, Article III, ¶ 3. Later on, the Plan refers to Participating Investors, yet fails to identify them or their likely sources of funds.

In addition, the proposed DIP Financing suffers from a number of fatal flaws, one of the most important of which is the fact the proposed DIP Lender may withdraw its financing proposal at any time within its sole discretion. Such a provision necessarily means the Debtors have no loan commitment on which to base a plan of reorganization. Further, although the Plan provides another generic statement that it "may be

FENNEMORE CRAIG, P.C.
TUCSON
2293816

implemented by current owners and/or new Participating Investors making capital contributions ... if required[,]" *see* Plan, ¶ 5.1, neither the Plan nor the Disclosure Statement discuss (i) the means of soliciting potential Participating Investors or the identity, if any, of such investors willing to contribute capital to the Debtors, and (ii) the amount of capital contributions which may be necessary to implement the Plan. Such generic statements do not provide concrete support to confirm a plan of reorganization under section 1129 of the Bankruptcy Code. Essentially, implementation of the Plan is based on revenue the Debtors hope will be generated by the continued construction of the Real Property. Yet, continued construction of the Real Property cannot occur until the Debtor obtains the DIP Financing, and/or capital contributions from investors, neither of which is assured. Such a wholly speculative and unsubstantiated proposal amounts to no plan at all, and certainly evidences that no "effective reorganization ... *is in prospect.*" *Timbers of Inwood*, 484 U.S. at 375-76 (emphasis in original).[7]

The purpose of the feasibility requirement "is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *In re Trans Max Techs., Inc.*, 349 B.R. 80, 91 (Bankr. D. Nev. 2006) (citing *In re Pizza of Haw., Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985); *see also In re Patrician St. Joseph Partners Ltd. P'ship*, 169 B.R. 669, 674 (Bankr. D. Ariz. 1994); *Matter of K. C. Marsh Co., Inc.*, 12 B.R. 401, 403 (Bankr. Mass 1981) (a debtor "must demonstrate that there is a reasonable possibility of a successful reorganization . . . . The plan for reorganization must be more than a nebulous speculative venture. It must have a realistic chance of success which would lead to rehabilitation, and if outside financing is needed, it must be clearly in sight.")

(b) **No Effective Reorganization Is In Prospect**

The Debtors carry the burden of proving the "property is necessary to an effective reorganization." *See Timbers of Inwood*, 484 U.S. at 375 (citing 11 U.S.C. § 365(g)). The

---

[7] The proposed Plan suffers from a host of other defects, including, but not limited to, improperly gerrymandering classes of creditors and violating the absolute priority rule.

FENNEMORE CRAIG, P.C.
TUCSON

2293816

9th Circuit B.A.P. has implicitly recognized that the debtor's burden of proof under section 362(d)(2) "is a 'moving target which is more difficult to attain as the Chapter 11 case progresses.'" *Sun Valley Newspapers*, 171 B.R. at 75 (quoting *In re Holly's Inc.*, 140 B.R. 643, 700 (Bankr. W.D. Mich. 1992)). "Near the expiration of the exclusivity period, the debtor must demonstrate that a successful reorganization within a reasonable time is ***probable***." *Id.* (quoting *Holly's Inc.*, 140 B.R. at 702) (internal quotations omitted) (emphasis added). "After the expiration of the exclusivity period, the debtor must offer sufficient evidence to indicate that a successful reorganization within a reasonable time is ***assured***." *Id.* (quoting *Holly's Inc.*, 140 B.R. at 702) (internal quotations omitted) (emphasis added). "Regardless of the amount of time a case has been pending, if the evidence indicates that a successful reorganization within a reasonable time is ***impossible***, the court must grant relief from the stay." *Id.* (quoting *Holly's Inc.*, 140 B.R. at 702-03) (internal quotations omitted) (emphasis added). Since the Debtors' extended exclusivity period expired on December 13, 2009 (Docket No. 140), the Debtors carry a heavy burden to prove that the Collateral is necessary to an effective reorganization. This is a burden the Debtor cannot meet since reorganization is neither probable nor assured; instead, it is simply impossible.

In *In re Kittrell*, the debtor contended his real property was necessary for an effective reorganization based on his argument that continued construction would lead to an increased value of the real property sufficient to repay the secured creditor within five years. 2009 Bankr. LEXIS 2873, at *2-3 (Bankr. D. Ariz. Sept. 10, 2009) (unpublished) (a copy is attached hereto as **Exhibit D**). The court held these alleged justifications failed to satisfy the debtor's burden under section 362(d)(2), finding "[t]he Debtor presented no evidence that the ... construction loan was in process or viable, nor that even if accomplished, that the property would increase in value sufficient to meet his expectations." *Id.* at *2. The court also found that "the Debtor [failed to] present any evidence, other than his optimism, that the current dire economic condition would improve over time, and what that time frame would be." *Id.*

2293816

Here, the Debtors have posed similar arguments in their DIP Financing Motion and proposed Plan, without a shred of evidence to substantiate their speculative claims and hopes the "current dire economic condition" will improve over time. "A reorganization plan that is 'wholly speculative' is not feasible and cannot be confirmed." *Cedar Funding*, 2007 Bankr. LEXIS 50, at *11 (citing *Wiersma v. O.H. Kruse Grain & Milling (In re Wiersma)*, 324 B.R. 92, 112 (B.A.P. 9th Cir. 2005)). "The court 'should not, at the conclusion of the debtor's case, be left to speculate about important elements and issues relating to the likelihood of an effective reorganization.'" *Id.* (quoting *In re Anderson Oaks (Phase I) Ltd. P'ship*, 77 B.R. 108, 110 (Bankr. W.D. Tex. 1987)). *See Ambanc La Mesa Ltd. P'ship*, 1993 U.S. App. LEXIS 12828 (unpublished) (affirming an order lifting the automatic stay under section 362(d)(2) whether the debtor's proposed plan relating to an apartment complex "utilized unrealistically high projections of occupancy rates").

The Debtors' continued losses and failure to make any payments on the Loan for more than 1.5 years, along with the declining value of the Real Property, further undercuts any argument that any proposed plan is confirmable. *See Sun Valley Ranches*, 823 F.2d at 1376 (granting a secured creditor's motion to lift the automatic stay under sections 362(d)(1) and (d)(2) where, among other things, (i) the debtor continued to incur steady losses, (ii) the property securing the creditor's debt continued to decline in value, and (iii) the debtor failed to pay "either interest or principal on its loan for four years."). As a result, the Debtors simply cannot prove that the Real Property is necessary to an effective reorganization, and the automatic stay must be lifted.

(c) **The Plan is Not in the Best Interests of Creditors**

Section 1129(a)(7) requires that, as to each impaired class of claims or interests, the holder of a claim or interest of such class has either accepted the plan or it will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor was liquidated under chapter 7 on the effective date. *See* 11 U.S.C. § 1129(a)(7). This is commonly referred to as the "best interest test." *See In re M. Long Arabians*, 103 B.R. 211, 216

FENNEMORE CRAIG, P.C.
TUCSON

2293816

- 12 -

(B.A.P. 9th Cir. 1989); *In re Diversified Investors Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988).

In general, to determine what holders of allowed claims in each Class would receive if the debtor was liquidated, a Bankruptcy Court must determine what funds would be generated from liquidation of the debtor's assets. Such liquidation funds would be reduced by the costs and expenses of the liquidation and by such additional administrative expenses resulting from the operation of the chapter 7 case for the purpose of liquidation. With this information the court may then determine if the plan satisfies the best interest test.

As set forth in Kennedy Funding's Objection to the DIP Financing Motion, the terms and conditions of the proposed DIP Financing are onerous. Indeed, due to the unattainable projections and conditions which accompany the DIP Financing Motion, the proposed DIP Financing appears to be nothing more than a "loan to own" the Debtor's property.

Furthermore, the Collateral is worth only $14.7 million, yet the Plan proposes to pay all unsecured claims in full. Under a chapter 7 liquidation analysis, the full value of the Collateral would go to Kennedy Funding and unsecured claims would receive nothing. Consequently, this Plan cannot be confirmed because it improperly pays unsecured creditors and equity ahead of Kennedy Funding. Consequently, the Plan is not in the best interests of creditors.

### (d) The Plan Unfairly Discriminates Against Kennedy Funding

The unfair discrimination prohibition is the first prong of the "cram down" test. The Bankruptcy Code, however, neither defines, nor does it provide any guidance regarding, unfair discrimination. In interpreting the meaning of unfair discrimination, courts have followed one of four approaches: (i) the "mechanical" approach; (ii) the "restrictive" approach; (iii) the "broad" approach; or (iv) an approach based upon a proposal postulated by Bruce A. Markell (the "Markell Test"). The Ninth Circuit has

FENNEMORE CRAIG, P.C.
TUCSON

2293816
- 13 -

adopted the restrictive approach. *In re Acequia, Inc.*, 787 F.2d at 1364 (9th Cir. 1986).

Under the restrictive approach, courts in the Ninth Circuit have held that Congress intended the unfair discrimination language of Section 1129(b) to only apply to a very specific and narrow factual situation: claims or interests that have been subordinated. *See In re Acequia, Inc.*, 787 F.2d at 1364; *In re Martin*, 66 B.R. 921, 929-30 (Bankr. D. Mont. 1986). If claims or interests have been subordinated, the plan must then "allocate value to the class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor." *In re Acequia, Inc.*, 787 F.2d at 1364; *see also In re Martin*, 66 B.R. at 929 (stating that "if the Plan protects the legal rights of a dissenting class in a manner consistent with the treatment of other classes whose legal rights are intertwined with those of the dissenting class, then the plan does not discriminate unfairly with respect to the dissenting class").

The Debtor's Plan unfairly discriminates against Kennedy Funding by proposing an unsubstantiated and unexplained "setoff" to reduce the amount to be paid to Kennedy Funding, while proposing to pay all other creditors in full and allowing equity to retain their interests. The Plan, therefore, unfairly discriminates by singling out the Kennedy Funding claim and providing for payment in full of creditors and interest holders with inferior interests to Kennedy Funding, giving inferior interests superior treatment under the Plan.

### (e) The Plan is Not Fair and Equitable

Section 1129(b)(1) provides that in order for a plan to be crammed down over a dissenting class it must be "fair and equitable." *See* 11 U.S.C. §1129(b)(1). In order for a plan to be fair and equitable in its treatment of a class of secured claims it must provide,

> (i) (I) that the **holders of such claims retain the liens securing such claims**, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim **deferred cash payments totaling at**

Fennemore Craig, P.C.
Tucson

2293816

*least the allowed amount of such claim, of a value, as of the effective date of the plan*, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

*Id.* Section 1129(b)(2)(A) (emphasis added).

Furthermore, Section 1129(b) requires that the dissenting claimant receive full payment over a *reasonable* period of time. *In re Hollanger*, 15 B.R. 35, 47 (Bankr. W.D. La. 1981). *See In re Tri-Growth Centre City, Ltd.*, 136 B.R. 848, 851 (Bankr. S.D. Cal. 1992) (confirmation denied where plan proposes to convert a fully matured short term loan into permanent financing). Payments over longer periods of time require stricter proof by the debtor of feasibility of the plan and adequate protection of the creditor. *In re Manion*, 127 B.R. 887, 890 (Bankr. N.D. Fla. 1991).

The Plan inexplicably provides for payment in full of all other creditors – including unsecured creditors – except for Kennedy Funding, which will not be paid until 2017. As noted above, the Plan and Disclosure statement are completely devoid of the details necessary to determine the specific treatment of the Kennedy Funding claim, or the basis upon which the Kennedy Funding claim supposedly is to be subject to setoff and unfair discrimination.

The Plan cannot be crammed down on Kennedy Funding because it unfairly discriminates against Kennedy Funding and is not fair and equitable with respect to Kennedy Funding. Consequently, there is no viable plan of reorganization, and relief from stay must be granted.

### IV. CONCLUSION.

For all the reasons discussed, the law entitles Kennedy Funding to entry of an

Order granting relief from stay, to immediately proceed with all of its contractual and state law rights and remedies against the Debtors. A proposed form of Order is attached to this Motion as **Exhibit E**.

DATED this 11th day of March, 2010

FENNEMORE CRAIG, P.C.

By /s/ George O. Krauja   #010964
George O. Krauja

By /s/ Laurel E. Davis, NV Bar #3005
Laurel E. Davis

Attorneys for Kennedy Funding, Inc.
and Anglo-American Financial, LLC

COPY of the foregoing was sent via mail this
11th day of March, 2010, to the following parties:

Eric Slocum Sparks
Eric Slocum Sparks PC
110 S. Church Avenue, Suite 2270
Tucson, AZ 85701
Attorneys for Debtors

Saguaro Ranch Development Corporation
PCC Investments, LLC
Saguaro Guest Ranch Management Corporation
Saguaro Ranch Investments, LLC
Saguaro Ranch Real Estate Corporation
P.O. Box 70207
Tucson, AZ 85737
Debtors

Christopher J. Pattock
Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003
Trustee

Sally M. Darcy
McEvoy, Daniels & Darcy P.C.
4560 E. Camp Lowell Drive
Tucson, AZ 85712
Attorneys for Official Joint Committee of Unsecured Creditors

/s/ *Stephanie R. Fulk-Higgs*

2293816