Eric Slocum Sparks
Arizona State Bar No. 11726
LAW OFFICES OF ERIC SLOCUM SPARKS, P.C.
110 South Church Avenue, #2270
Tucson, Arizona 85701
Telephone (520) 623-8330
Facsimile (520) 623-9157
eric@ericslocumsparkspc.com

Attorney for Debtors

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SAGUARO RANCH DEVELOPMENT CORPORATION,<br><br>    Debtor. | Jointly Administered Under<br>Case No. 4:09-bk-02490-EWH<br>Chapter 11 |
| In re:<br><br>PCC INVESTMENTS, LLC,<br><br>    Debtor. | Case No. 4:09-bk-02484-EWH<br>Chapter 11 |
| In re:<br><br>SAGUARO GUEST RANCH MANAGEMENT CORPORATION,<br><br>    Debtor. | Case No. 4:09-bk-02489-EWH<br>Chapter 11 |
| In re:<br><br>SAGUARO RANCH INVESTMENTS, LLC, | Case No. 4:09-bk-02492-JMM<br>Chapter 11 |
| In re:<br><br>SAGUARO RANCH REAL ESTATE CORPORATION,<br><br>    Debtor. | Case No. 4:09-bk-02494-EWH<br>Chapter 11<br><br>DEBTOR'S THIRD AMENDED AND MODIFIED PLAN OF REORGANIZATION DATED March 16, 2011 |

1

The Debtors, jointly administered as captioned above (hereinafter "the Debtor"), debtors-in-possession, hereby propose the following Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code. All creditors and other parties in interest are encouraged to consult the Disclosure Statement prepared by the Debtor, as approved by the Bankruptcy Court, before voting to accept or reject this Plan of Reorganization. The Disclosure Statement contains a discussion of the Debtor, its business operations and the disclosure of all other information material to the approval of this Plan of Reorganization. No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith as approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan of Reorganization.

## ***ARTICLE I***

### *Definitions*

For purposes of this Plan, except as expressly provided otherwise or unless the context otherwise required, all of the following defined terms will have the following meanings. The terms defined below will be equally applicable to both singular and plural forms, and to the masculine, feminine, and neuter forms, of such defined terms.

1.1 "<u>Administrative Claim</u>" will refer to and mean every cost or expense of administration of the reorganization case allowed under Bankruptcy Code §503(b) and referred to in Bankruptcy Code §507(a)(1), including without limitation: (a) any actual and necessary expense of preserving the estate as approved the Bankruptcy Court; (b) all

allowances, including professional fees and costs approved by the Bankruptcy Court; (c) any actual and necessary expenses incurred in the operation of the Debtor's business; and (d) all fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28, United Stated Code.

1.2 "Allowed Claim" shall mean (a) a claim off a person which has been scheduled by the Debtor as undisputed, and as to which claim no objection has been made by any other person within the time allowed for the making of objections; (b) a claim allowed by a final order; (c) a claim as to which a timely and proper proof of claim or application for payment has been filed, and as to which proof of claim or application for payment, no objection has been made within the time allowed for the making of objections; or (d) a claim allowed under the Plan, notwithstanding any objection filed thereto by an person. Interest accrued after the filing date of the Debtor's reorganization case shall not be a part of any allowed claim against such Debtor, except as required or permitted by law.

1.3 "Affiliate" shall mean any affiliate that is defined in Section 101(2) of the Bankruptcy Code.

1.4 "Allowed Amount" shall mean with respect to any allowed claim in a particular class under the Plan, the amount of such claims in such class.

1.5 "Allowed Interest" or "Allowed Equity Interest" shall mean (a) an equity interest in the Debtor held by a person as of the Effective Date, and as to which interest no objection has been made by any other person within the time allowed for the making of objections; (b) an interest allowed by a final order; (c) an interest

3

as to which a timely and proper proof of claim or application for payment no objection has been made within the time allowed for the making of objections or (d) an interest allowed under the Plan, notwithstanding any objection filed thereto by any person.

1.6 "Assets" shall mean, with respect to the Debtor, all rights, causes of action, all of the right, title and interest in and to property (real or personal, tangible or intangible) or whatsoever type or nature, owned by such Debtor as of the Effective Date, together with assets subsequently acquired by such Debtor, and including, but not limited to, property as defined in Section 541 of the Bankruptcy Code (each identified item of property being herein sometimes referred to as an asset).

1.7 "Ballot" will refer to and mean the ballot for accepting or rejecting the Plan which will be distributed to holders of claims and classes that are impaired under this Plan are entitled to vote on this Plan.

1.8 "Bankruptcy Code" will refer to and mean Title 11 of the United States Code 11 U.S.C. §101, et seq., as the same may be amended from time to time.

1.9 "Bankruptcy Court or Court" will refer to and mean the United States Bankruptcy Court for the District of Arizona, or such other court that exercises jurisdiction over all or part of the reorganization case, including the United States District Court for the District of Arizona, to the extent the reference of all or part of this reorganization case is withdrawn.

1.10 "Bankruptcy Rules" will refer to and mean the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. §2075

and the local rules of the Court, as applicable from time to time during the reorganization case.

1.11 "<u>Business Day</u>" will refer to and mean any day other than a Saturday, Sunday, or federal holiday recognized by the Federal Courts for the District of Arizona, and Arizona State holidays recognized by the Federal Courts for the District of Arizona.

1.12 "<u>Case</u>" shall mean the Chapter 11 case commenced by the filing with the Court of a voluntary petition for relief under Chapter 11 of the Code by the Debtor.

1.13 "<u>Cash</u>" will refer to and mean cash, cash equivalents, bank deposits, and negotiable instruments.

1.14 "<u>Chapter 11</u>" shall mean Chapter 11 of the Code, 11 U.S.C. Section 1101-46.

1.15 "<u>Claim</u>" will refer to and mean every right and remedy encompassed within the statutory definition set forth in Bankruptcy Code §101(4), 11 U.S.C. §101(4), whether or not such claim is asserted.

1.16 "<u>Class</u>" will refer to and mean each of the categories of claims and interests described in Article II of this Plan.

1.17 "<u>Confirmation Date</u>" will refer to and mean the date on which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.18 "<u>Confirmation Hearing</u>" will refer to and mean the hearing regarding the confirmation of this Plan conducted pursuant to Bankruptcy Code §1128, as adjourned or continued to from time to time.

1.19 "<u>Confirmation Order</u>" will refer to and mean the order confirming this Plan pursuant to Bankruptcy Code §1129.

1.20 "Court" shall mean the United States Bankruptcy Court for the District of Arizona, Tucson Division.

1.21 "Creditor" will refer to and mean every holder of a claim whether or not such claim is an allowed claim, encompassed within the statutory definition set forth in Bankruptcy Code §101(9), 11 U.S.C. §101(9).

1.22 "Debtor" will refer to and mean Saguaro Ranch Development Corporation ("SRD"), Saguaro Guest Ranch Management Corporation ("SGRM"), Saguaro Ranch Investments LLC ("SRI"), PCC Investments LLC, ("PCC") and Saguaro Ranch Real Estate Corporation ("SRRE"), in the capacities as the Debtor and Debtor-In-Possession in the reorganization case with the status and rights conferred by U.S.C. Section 1107, jointly administered under Case No. 4:09-bk-2490-EWH.

1.23 "Deficiency Claim" shall mean an allowed claim of a creditor, if any, equal to the amount by which the aggregate allowed claims of such creditor exceed the sum of (a) any setoff rights of the creditor permitted under Section 553 of the Bankruptcy Code rights of the creditor permitted under Section 553 of the Bankruptcy Code plus (b) the secured claim of such creditor; provided however, that if the holder of a secured claim of the class of which such claim is a member makes the election provided in Section 1111(b)(2) of the Bankruptcy Code, there shall be no deficiency claim in respect of such claim.

1.24 "Disclosure Statement" will refer to and mean the written statement describing this Plan which is prepared by the Debtor and distributed in accordance with Bankruptcy Code §§1125, 1126(b), and 1145 and Bankruptcy Rule 3018, as amended, in its present form or as the same may be altered, amended, or modified by the Debtor.

6

1.25 "<u>Disputed Claim or Disputed Interests</u>" will refer to and mean every claim; (a) that is scheduled by the Debtor as disputed, contingent or unliquidated; or (b) proof of which has been filed with the Bankruptcy Court and an objection to the allowance thereof, in whole or in part, has been interposed prior to the final date provided under this Plan for the filing of such objections or such other time as provided by the Bankruptcy Court and which objection has not been withdrawn, settled or determined by the final order.

1.26 "<u>Effective Date</u>" shall mean the later of (a) the first business day following the **30th** day after entry of the Court of an order confirming this Plan, or (b) the first business day after such order has become final and unappealable; provided however, no appeal of said order is pending; provided further, the Debtor may waive the condition that no appeal of the order of confirmation be pending by a writing duly executed by the Debtor and filed with the Court on or before the date which but for the pendency of appeal would become the effective date of the Plan, and in the event that said condition is timely waived by the Debtor, the Plan shall become effective as provided herein notwithstanding the pendency on said date of an appeal or appeals; in the event that said condition is not timely waived, the Plan shall become effective on the first business day after an appeal is no longer pending.

1.27 "<u>Estate</u>" will refer to and mean the bankruptcy estate of the Debtor created in the reorganization case under the Bankruptcy Code.

1.28 "<u>Estate Lots</u>" will refer to those lots Debtor has available for sale.

1.29 "<u>Equity Contribution</u>" means that money from an equity holder

which needs to be contributed so as to allow them to retain their interest in the Debtor. Debtor shall receive $3,000,000.00 to be used to pay creditors under its Plan, including real estate taxes, Arizona sales taxes, attorney's fees and costs and other allowed administrative expenses, improvements to properties, and cash reserves for Plan payments.

1.30 "<u>Final Order</u>" shall mean an order of judgment of the Bankruptcy Court which (a) shall not have been reversed, stayed, modified or amended and the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, or rehearing or certiorari is pending; or (b) if appealed from, shall have been affirmed and no further hearing, appeal or petition for certiorari can be taken or granted, or as to which no stay has been entered to affect the operative provisions of such order of judgment.

1.31 "<u>Insider</u>" shall refer to and mean all persons who qualify as an "insider" pursuant to 11 U.S.C. §101(31).

1.32 "<u>Interest</u>" shall mean any equity interest in the Debtor as of the petition date.

1.33 "<u>Interest Holder(s)</u>" shall mean any person or persons owning an equity interest in the Debtor as of the Effective Date.

1.34 "<u>Minimum New Capital Contribution</u>" refers to that sum of money that may be paid in cash into the escrow account prior to confirmation in order to proceed with confirmation of the Plan, if necessary. The amounts necessary to be funded by such Effective Date are detailed in the Disclosure Statement.

1.35 "<u>Participating Investors</u>" shall mean those investors

8

selected by the Debtor to make capital contributions to the Reorganized Debtor in exchange for an interest in the Debtor.

1.36 "<u>Pending Sales</u>" shall mean those **ten (10)** Estate Lots and the Casita Lot, sales contracts on file with the Court, currently in escrow being sold when Debtor's Plan is confirmed.

1.37 "<u>Person</u>" will refer to and mean any individual, corporation, limited or general partnership, joint venture, association, joint stock company, trust, unincorporated organization, or government or any agency or political subdivision thereof.

1.38 "<u>Petition Date</u>" shall mean the date that the Debtor filed the voluntary petition under Chapter 11 of the Bankruptcy Code with this Court.

1.39 "<u>Plan</u>" shall mean this Plan of Reorganization as set forth herein, in its entirety, and all addenda, exhibits, schedules, releases, and other attachments thereto as may be amended or supplemented from time to time.

1.40 "<u>Preference Recovery Amounts</u>" shall mean all sums collected as preferences under §547 of the Code and as set-offs under §553 of the Code.

1.41 "<u>Professional Persons</u>" means persons retained or to be compensated pursuant to §§327, 328, 330 and 503(b) of the Code.

1.42 "<u>The Property</u>" means the personal property of the debtor.

1.43 "<u>Proponent</u>" shall mean the Debtor.

1.44 "<u>Release Prices</u>" shall mean that sum of  monies paid to secured creditor  when Estate Lots are sold requiring them to release their Deed of Trust and lien on the property being sold.  Release prices set by Debtor may be modified by the Court.

9

1.45 "Sales" shall mean those ten Estate Lots and the Casita Lot to be sold when Plan is confirmed.

1.46 "Secured Claim" shall mean (a) a claim secured by a lien on property of the Debtor, which lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly established in such Debtor's reorganization case, but only to the extent that such claim does not exceed the value of such Debtor's assets which the Bankruptcy Court finds are valid security for such claim (except, if the class of which such claim is a part makes the election provided in Section 1111(b)(2) of the Bankruptcy Code, the entire amount of the claim shall be a secured claim and (b) a claim allowed under the Plan as a secured claim.

1.47 "Secured Creditors" means persons holding allowed secured claims within the meaning of Section 506 of the Code.

1.48 "Tax Claims" shall mean the claims of any person for the payment of taxes (a) accorded a priority pursuant to Section 507(a)(1) and (7) of the Bankruptcy Code, but excluding all claims for post-petition interest and pre-petition and post-petition penalties, all of which interest and penalties shall be deemed disallowed and discharged on the Effective Date.

1.49 "Taxing Authorities" shall mean any legal entity with authority to levy and collect taxes pursuant to federal, state or local statutes or ordinances.

1.50 "Unsecured Claims" shall mean all claims held by creditors of the Debtor, including deficiency claims, dissolution claims and claims arising out of the rejection of executory contracts, other than

secured claims, administrative claims and tax claims.

1.51 "Unsecured Creditors" shall mean persons holding allowed unsecured claims against the Debtor for which there are no assets of the Debtor serving as security (excluding undersecured mortgage deficiency creditors), but not including priority claims.

All terms not specifically defined by this Plan shall have the meaning designated in the Bankruptcy Code, or if not defined therein, their ordinary meanings.

## *ARTICLE II*

### *General Terms and Conditions*

2.1  Class of Claims and Payment: Various classes of claims and interests are defined in this Plan.  This Plan is intended to deal with all claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to Section 502(h) of the Code.  However, only those claims allowed pursuant to Section 502(a) of the Code will receive payment under this Plan.

2.2  Preserved Liens: To the extent required under Section 1124(2) of the Code, to preserve the rights of a creditor having a secured claim addressed pursuant to that Section, the lien or encumbrance of that creditor shall, to the extent valid, be preserved.

2.3  Time for Filing of Claims: The list of creditors filed in these proceedings by the Debtor shall constitute the filing of a claim by each creditor which is not listed as disputed, contingent or unliquidated as to amount.  The Debtor reserves the right to object to any such claim where it appears that the amount scheduled by the Debtor is improper or where there is some dispute with regard to that

11

claim. All other creditors, or creditors who disagree with the amounts as scheduled by the Debtor must file prior to the date set for the hearing on the Disclosure Statement, a proof of claim or proof of interest. Failure to timely file a proof of claim or file a proof of interest, if not listed on the Debtor's schedules as non-contingent, liquidated and undisputed, will result in a disallowance of the proof of claim or proof of interest.

## *ARTICLE III*

*Classification and Treatment of Claims and Interests*

For purposes of the plan, claims are classified and treated as follows:

1. *Claim Amounts*: Because certain claims against the Debtor may be unknown or of undetermined amounts, the amounts of claims specified in this Disclosure Statement reflect only the Debtor's best estimate at this time of the amount due. In addition, the amounts of the claims specified in this Disclosure Statement do not include, for example, claims arising from the rejection of certain executory contracts and other contingent or unliquidated claims arising against the debtor. Disputed or unliquidated claims will be adjusted after confirmation of the plan and prior to closing the case.

2. *Effective Date of the Plan*: The "Effective Date" of the Plan is important in determining when performance of many of the Debtor's obligations under the Plan may commence. The Effective Date is defined in the Plan as the first business day following the later of the following day;

(I) the date on which the Order confirming the Plan (the

"Confirmation Order") becomes final and non-appealable with no appeal then pending;

3.   *Default Under Plan:* Any required payment not made in the time frame set forth herein shall entitle creditor to declare a default.  Any default not cured by Debtor within 30 days after written notice of default shall entitle creditor to exercise its remedies under state law.

4.   *Funding Plan of Reorganization*:  Debtor shall fund its plan of reorganization from the ten Estate Lot sales currently in escrow, a schedule of which is attached hereto as Exhibit "A", averaging $500,000.00 per lot, the sale of the Casita Lot currently in escrow for the purchase price of $3,250,000.00, and other property sales as well as from capital contributions in the amount of $3,000,000.00 made to reorganized Debtor at confirmation.

5.   *Sale of Casita Lot:* Upon Confirmation of Debtor's Plan of Reorganization, Debtor will complete the sale of the approximately 40 acre parcel of real property currently in escrow at Title Security to Stonehill Enterprises USA, Inc. for the cash sum of $3,250,000.00. The proceeds of sale will be used to pay taxes and closing costs, and Debtor will pay $3,000,000.00 to Kennedy Funding at closing, who will remove their Deed of Trust and lien on the property being sold.  This sale shall not include the approximately 10 acres which includes McClintock's Restaurant, the spa site and other planned amenities set forth in Debtor's Disclosure Statement and Plan of Reorganization and shown on Exhibit "B" attached hereto.

6.   *Classification*: The Plan divides claims against the Debtor into multiple separate classes that the Debtor asserts are in

13

accordance with the Bankruptcy Code. Unless otherwise expressly stated in the Plan, distributions to holders of allowed claims are in full satisfaction of their allowed claims. All claims against the Debtor arising prior to confirmation will be discharged by performance of the Plan on the Effective Date to the extent that such claims are dischargeable under the Bankruptcy Code Section 1141(d). For the purposes of the Plan, claims are classified and treated as follows:

3.1 <u>Class 1- Administrative Claims</u>.

A. <u>Classification</u>: Class 1 consists of all claims for the cost of administration of the Debtor's bankruptcy estate. Included in this class are claims for administrative expenses entitled to priority under Bankruptcy Code §507()(A)(1) Such as professional fees and costs, as approved by the Bankruptcy Court of the attorneys, accountants, and other professional persons employed by the Debtor, and all actual and necessary expenses of operating the Debtor's business pursuant to Bankruptcy Code §503(b), including without limitation, all fees charged against the Debtor's business pursuant to Chapter 123 of Title 28, United States Code. Administrative claims shall include any post petition taxes due any taxing authority on the petition date. <u>Debtor estimates these claims may exceed $300,000.00.</u>

B. <u>Impairment:</u> Not impaired.

C. <u>Treatment</u>: The Plan provides for the payment in cash, in full, of all Allowed Administrative Claims on the later of the Effective Date or the date upon which such Claims become Allowed Claims, or as otherwise ordered by the Bankruptcy Court or agreed to by claimants. Class 1 claims will be paid from assets of the estate or from "new monies" received by the Debtor, or from its business

operations, for attorneys fees, costs and costs of any expert utilized by Debtor, and other administrative fees. The Debtor currently estimates that the Class 1 claims may exceed $300,000.00 and will include post-petition administrative expenses and may include fees due the United States Trustee, ad valorem real property taxes and include post-petition payables for business operations. The Debtor will continue to pay all fees due the U. S. Trustee post - confirmation and to file any reports required by law. The debtor believes the fees owed to the United States Trustee are current. Any fees or costs claimed under various security agreements in favor of secured creditors shall not be treated or paid as administrative claims but any fees and costs allowed under deeds of trust or other security agreements after being approved by the Court as reasonable and necessary shall be added to the allowed claim of any secured creditor and shall be paid over time.

### 3.2  Class 2- Employee Priority Claims

A.    Classification: Class 2 consists of allowed claims arising under Bankruptcy Code Section 507(a)(3) and (4) including claims for wages and vacation pay earned by employees of the Debtor within 90 days before the filing of the bankruptcy petition. The Debtor estimates there are claims in this class which do not exceed $16,000.00.

B.    Impairment: Not impaired.

C.    Treatment: The Plan provides for the payment in cash, in full, of all allowed Class 2 claims on the later of the Effective Date or the date upon which such claim becomes an allowed claim or the date listed in the Plan.

3.3 <u>Class 3- Claims of Governmental Units</u>

  A. <u>Classification</u>: Class 3 claims consists of all allowed claims of the United States Internal Revenue Service("IRS") and/or State of Arizona, Department of Revenue("AZDOR") and/or the Department of Economic Security("ADES"), Pima County or other government agency which are entitled to priority pursuant to Section 507(a)(7) of the Bankruptcy Code except ad valorem taxes. <u>Debtor believes that claims in this Class may exceed $100,000.00.</u>

  B. <u>Impairment</u>: Class 3 is impaired.

  C. <u>Treatment</u>: Unless otherwise stipulated between Debtor and Creditor, each holder of a Class 3 allowed claim shall retain its lien or claim, in accordance with Section 1129 of the Bankruptcy Code. The claim shall bear simple interest at a fixed rate equal to that rate which would be required to be paid as of the Effective Date under Section 6621 and/or 6622 of the Internal Revenue Code, or such other interest rate as the Bankruptcy Court determines is sufficient to confer upon the tax note a value as of the Effective Date equal to the principal amount of such claim. The allowed claim shall be payable over 60 months or sooner if stipulated by parties from lot sales, along with accrued interest, in deferred cash payments over a period not to exceed 60 months from date of assessment. The claim is subject to prepayment at any time without penalty or premium and shall have such other terms as are usual and customary. Debtor has entered into a stipulation with Arizona Department of Revenue to pay one half of administrative claims within 30 days of the Effective Date and balance 30 days thereafter. Other fees shall be paid in equal monthly installments over six (6) months.

3.4 <u>Class 4 - Secured Ad Valorem Real Property Tax Claims</u>

A. <u>Classification</u>: Class 4 shall consist of pre-petition allowed Ad Valorem Real Property Tax Claims of Pima County which are secured by liens on real property. <u>The Debtor estimates claims may exceed $741,000.00 after sale of Casita lot.</u>

B. <u>Impairment</u>: Class 4 is impaired.

C. <u>Treatment</u>: Each holder of a Class 4 allowed claim shall be paid an aggregate principal amount equal to pre-petition claims in cash within 30 days of the Effective Date. Other Pima County claims shall be payable upon sales of each lot, along with any accrued interest, or from monies held by Debtor. Debtor shall pay monthly all post-petition accruing interest at 16% per annum on unsold lots. The lien/claim is subject to prepayment at any time without penalty or premium.

3.5 <u>Class 5 - Secured Claim of Kennedy Funding, Inc. & Anglo-American Financial, LLC ("Kennedy")</u>

A. <u>Classification</u>: This claim consists of the allowed claim of Kennedy equal to the extent of the value of the secured creditor's interest in the Debtor's interest in the real and personal property of the Debtor. <u>This claim is evidenced by a Promissory Note, Deed of Trust and UCC in the approximate amount of $28,000,000.00 on the petition date.</u> Kennedy is believed to be a cross collateralized creditor of Saguaro Ranch Investments, LLC and Saguaro Ranch Development Corp. Debtor believes that Kennedy may not be entitled to interest or default interest and other monies claimed due by Kennedy. Debtor believes a portion of Kennedy's claim may be subject to offset or disallowed. Debtor believes the current value of Debtor's assets

is less than the amount of Kennedy's claim on petition date.

        B.   <u>Impairment</u>: Class 5 is impaired.

        C.   <u>Treatment</u>:  IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH KENNEDY AS TO ITS TREATMENT, THE TERMS AND CONDITIONS **THEREIN** WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN. Under §506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor, if eligible, elects to have it's claim treated as fully secured, which Kennedy has done by making its 1111(b) election.  Kennedy has made an 1111(b) election to receive interest on the current value of Debtor's assets only.  The balance of its 1111(b) allowed claim shall receive no interest and is not permitted to vote for or against Debtor's Plan of Reorganization.  Debtor has obtained a current market value appraisal of Debtor's assets which shows that the debtor's assets have a current market value of approximately three million dollars higher than secured creditors value of Debtor's assets, $17,250,000, and Kennedy  will be paid the full amount of that value ($17,250,000) plus a market rate of interest of 6.0.% on this obligation in monthly payments as set forth in the Cash Flow Projection and Sources and Uses of Cash attached as Exhibit "C" and Exhibit "D" to Plan.  Debtor will further reduce Kennedy's claim of $17,250,000 to $14,250,000 by the sale of Lot 50, the Casita site, for the net sum of $3,000,000 being paid to Class 5 creditor at closing of sale.  The debtor proposes to pay the balance of the Class 5 creditor's 1111(b) claim as set forth in Debtor's Cash Flow Projections and Sources and Uses of Cash (Exhibits "C" and "D"). Any

other amount representing an allowed claim of Kennedy exceeding this amount shall be paid as set forth in Debtor's Cash Flow Projections and Sources and Uses of Cash.

The value of Debtor's assets shall be paid from Estate Lot sales or new capital as set forth in the Cash Flow Projections attached as Exhibit "C" and Sources and Uses of Cash statement attached as Exhibit "D", subject to any offsets due Debtor, by the end of 50 months from Effective Date. Debtor proposes to amend the existing Deed of Trust to set release prices on lots sold or monies received for the same at $213,975.00 per estate lot, or such other release price determined by this Court, and other amendments.

The "Lot Value" "Release Price" shall be the amount Kennedy shall be paid to release its Deed of Trust, lien, or interest in the Property being sold or paid for, which is the "Lot Value" set forth in the Appraisal and identified in the chart above. Pursuant to Debtor's appraisal of its assets, that amount of $17,250,000.00 shall be paid as follows:

1. Interest on the unpaid Secured Claim shall be paid monthly at the rate of 6.0% per annum (or a different rate if so determined by the Court to be market rate of interest, or by stipulation between the parties), commencing on the Effective Date. Interest shall be paid monthly from monies held by Debtor from any source.

2. From and after the Effective Date, Debtor shall make principal reduction payments to Kennedy Funding as the Estate Lots are sold with release prices paid from Estate Lot sales and from a sale of a portion of the lot known as the Casita Lot, or from other monies available to Debtor. Kennedy shall release its Deed of Trust as to

19

each Estate Lot sold or upon payment of the Lot Release Price of $213,975.00 or such other amount determined by the Court. Kennedy shall also release its Deed of Trust and other liens, if any, to that portion of the Casita Lot being sold and receive $3,000,000.00 for same. For example, for each Estate Lot sold or upon payment of this amount to Kennedy, Kennedy will release its Deed of Trust upon payment of the Lot and be paid the Release Price in the sum of $213,975.00 for each lot sold or paid for or such other amount set by this Court.

3.   On the Effective Date, the monthly interest payments, based on the value of Debtor's assets, shall be paid each month.  Based upon the values set forth it its appraisal, Kennedy shall release its Deed of Trust and any other lien or interest it may claim as to each Estate Lot upon payment of $213,975.00, or any different amount set by this Court, by Debtor for Estate Lots.   Those payments shall reduce Kennedy's Secured Claim, and interest will accrue at the rate of 6.0% per annum on unpaid balance until paid.

4.   Kennedy shall receive release prices and monthly interest payments as set forth herein, which shall reduce Debtor's obligation to pay Class 5 creditor, which shall equal a minimum annual payment Debtor shall make to Kennedy.  Debtor agrees to make minimum annual payments as follows on an annual 12 month basis to Kennedy from any source:

<u>Minimum Payment to Kennedy</u>

| Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|
| $5,000,000.00 | $3,500,000.00 | $3,500,000.00 | $3,500,000.00 | $3,500,000.00 |

20

In the event Debtor does not sell enough Estate Lots to make the minimum annual payment to Kennedy, Debtor shall make the payment from any other source of monies available to Debtor and shall obtain a release from Kennedy on Estate Lots selected by Debtor. These Estate Lots shall remain assets of Debtor's estate until sold and Kennedy is paid the full amount of its allowed claims. A summary of payments to Class 5 creditor is attached as Exhibit "E".

3.6 <u>Class 6 - Secured Claim of Mollie Cohen ("Cohen")</u>

A. <u>Classification</u>: This claim consists of the allowed secured claim of Mollie Cohen and/or her successor in interest to the extent of the value of the secured creditor's interest in the Debtor's interest in the real property of the Debtor. <u>This claim is evidenced by a note and DOT on the 3.3 acres where the sales office is located in the approximate amount of $70,500.00 plus any accrued interest</u> Cohen is believed to be a creditor of Saguaro Ranch Investments, LLC and fully secured.

B. <u>Impairment</u>: Class 6 is impaired.

C. <u>Treatment</u>: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH COHEN AND/OR HER SUCCESSOR IN INTEREST AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN. Under §506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor, if eligible, elects to have it's claim treated as fully secured. The allowed amount of the Creditor's secured claim will be the lesser of value of the creditor's interest in the debtor's interest in the property as

21

determined under § 506, or the allowed amount of the creditor's claim. The debtor does not propose to limit the Class 6 creditor's secured claim and to treat the claim as fully secured along with a market rate of interest.

The allowed secured claim of the Class 6 creditor shall be paid and secured by the promissory note and deed of trust, modified as follows:

1.   The allowed secured claim shall accrue interest from the Effective Date of the Plan at the rate of five (5.0%) percent per annum.   The Class 6 creditor is entitled to interest on its allowed secured claim from the Petition date to the Confirmation Date.

2.   The note shall be payable in equal monthly installments of principal and interest amortized over 120 months and paid from proceeds of sale of properties owned by Debtor or from other monies available to Debtor.

3.   The note of the Class 6 creditor shall continue to be secured by the first position deed of trust on the property to the extent of its value.   Any security for payment of the allowed claim which Cohen had at the petition date which encumbers the property shall be retained post-confirmation.

3.7   <u>Class 7 – Secured Claim of Ford Motor Credit ("Ford")</u>

A.   <u>Classification</u>: This claim consists of the allowed secured claim of Ford to the extent of the value of the secured creditor's interest in the Debtor's interest in the property of the Debtor. <u>This claim is evidenced by a title lien on a Ford vehicle identified as (1081).</u>  Ford is believed to be a creditor of Saguaro Ranch Development Corp.

22

B.   Impairment: Class 7 is impaired.

C.   Treatment: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH FORD CREDIT AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN. Under §506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor, if eligible, elects to have it's claim treated as fully secured.  The allowed amount of the Creditor's secured claim will be the lesser of value of the creditor's interest in the debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim.  The debtor propose to limit the Class 7 creditor's secured claim to current market value and to pay interest at the rate of 6.0 % and to pay that amount over sixty months.  If the debtor and the Class 7 creditor cannot agree as to the amount of the Class 7 creditor's allowed secured claim, the Court will be called upon to make that determination.

3.8  Class 8 - Secured Claim of Ford Motor Credit ("Ford")

A.  Classification: This claim consists of the allowed secured claim of Ford to the extent of the value of the secured creditor's interest in the Debtor's interest in the property of the Debtor. This claim is evidenced by a title lien on a  Ford vehicle identified as (3841- #36).  Ford is believed to be a creditor of Saguaro Ranch Development Corp.

B.   Impairment: Class 8 is impaired.

C.   Treatment: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH FORD CREDIT AS TO ITS TREATMENT, THE TERMS AND

23

CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN. Under §506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor, if eligible, elects to have it's claim treated as fully secured. The allowed amount of the Creditor's secured claim will be the lesser of value of the creditor's interest in the debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The debtor propose to limit the Class 8 creditor's secured claim to current market value and to pay interest at the rate of 6.0% and to pay that amount over sixty months. If the debtor and the Class 8 creditor cannot agree as to the amount of the Class 8 creditor's allowed secured claim, the Court will be called upon to make that determination.

3.9    Class 9 - Secured Claim of Ford Motor Credit ("Ford")

A.    Classification: This claim consists of the allowed secured claim of Ford to the extent of the value of the secured creditor's interest in the Debtor's interest in the property of the Debtor. This claim is evidenced by a title lien on a Ford vehicle identified as (3841 - #37). Ford  is believed to be a creditor of Saguaro Ranch Development Corp.

B.    Impairment: Class 9 is impaired.

C.    Treatment: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH FORD CREDIT AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN. Under §506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's

24

interest in the collateral and an unsecured claim for the balance, if any, unless the creditor, if eligible, elects to have it's claim treated as fully secured. The allowed amount of the Creditor's secured claim will be the lesser of value of the creditor's interest in the debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The debtor propose to limit the Class 9 creditor's secured claim to current market value and to pay interest at the rate of 6.0 % and to pay that amount over sixty months. If the debtor and the Class 9 creditor cannot agree as to the amount of the Class 9 creditor's allowed secured claim, the Court will be called upon to make that determination.

3.10 <u>Class 10 - Secured Claim of Ford Motor Credit ("Ford")</u>

A. <u>Classification</u>: This claim consists of the allowed secured claim of Ford to the extent of the value of the secured creditor's interest in the Debtor's interest in the property of the Debtor. <u>This claim is evidenced by a title lien on a Ford vehicle identified as (3841 - #37)</u>. Ford is believed to be a creditor of Saguaro Ranch Development Corp.

B. <u>Impairment</u>: Class 10 is impaired.

C. <u>Treatment</u>: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH FORD CREDIT AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN. Under §506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor, if eligible, elects to have it's claim treated as fully secured. The allowed amount of the Creditor's

25

secured claim will be the lesser of value of the creditor's interest in the debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The debtor propose to limit the Class 10 creditor's secured claim to current market value and to pay interest at the rate of 6.0 % and to pay that amount over sixty months. If the debtor and the Class 10 creditor cannot agree as to the amount of the Class 10 creditor's allowed secured claim, the Court will be called upon to make that determination.

3.11 <u>Class 11 - Secured Claim of Amanti Electric Co. ("Amanti")</u>

A. <u>Classification</u>: This claim consists of the allowed secured claim of Amanti Electric Co. to the extent of the value of the secured creditor's interest in the Debtor's interest in collateral securing its claim. <u>This claim is evidenced by a mechanic's lien in the amount of $28,133.00</u>. Amanti is believed to be a creditor of Saguaro Ranch Development Corp.

B. <u>Impairment</u>: Class 11 is impaired.

C. <u>Treatment</u>: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH AMANTI AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN. Under §506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor, if eligible, elects to have it's claim treated as fully secured. The allowed amount of the Creditor's secured claim will be the lesser of value of the creditor's interest in the debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The debtor proposes to limit the Class

11 creditor's claim and to treat the claim in the same manner as a Class 15 unsecured creditor.

3.12 <u>Class 12 - Secured Claims of Arizona Labor Force, Inc.</u>

A.  <u>Classification</u>:  This claim consists of the allowed secured claim of Arizona Labor Force, Inc. to the extent of the value of the secured creditor's interest in the Debtor's interest in collateral securing its claim.  <u>This claim is evidenced by a mechanic's lien believed to be in the amount of $4,959.00</u>. Arizona Labor Force, Inc. is believed to be a creditor of Saguaro Ranch Development Corp.

B.  <u>Impairment</u>: Class 12 is impaired.

C.  <u>Treatment</u>:  IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH ARIZONA LABOR FORCE AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN. Under §506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor, if eligible, elects to have it's claim treated as fully secured.  The allowed amount of the Creditor's secured claim will be the lesser of value of the creditor's interest in the debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The debtor proposes to limit the Class12 creditor's claim and to treat the claim in the same manner as a Class 15 unsecured creditor.

3.13 <u>Class 13 - Secured Claim of Earhart Equipment Corporation ("Earheart")</u>.

A.  <u>Classification</u>: This claim consists of the allowed

secured claim of Earhart Equipment Corporation to the extent of the value of the secured creditor's interest in the Debtor's interest in the real property of the debtor. <u>This claim is evidenced by a mechanic's lien in the amount of $80,754.00</u>. Earhart is believed to be a creditor of Saguaro Ranch Development Corp.

        B. <u>Impairment</u>: Class 13 is impaired.

        C. <u>Treatment</u>: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH EARHART AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN. Under §506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor, if eligible, elects to have it's claim treated as fully secured. The allowed amount of the Creditor's secured claim will be the lesser of value of the creditor's interest in the debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The debtor proposes to limit the Class 13 creditor's claim and to treat the claim in the same manner as a Class 15 unsecured creditor.

    3.14 <u>Class 14 - Secured Claim of Tucson Tractor Company</u>

        A. <u>Classification</u>: This claim consists of the allowed secured claim of Tucson Tractor Company to the extent of the value of the secured creditor's interest in the Debtor's interest in the real property of the Debtor. This claim is evidenced by a mechanic's lien in the amount of $17,028.90. Tucson Tractor Company is believed to be a creditor of Saguaro Ranch Development Corp.

        B. <u>Impairment</u>: Class 14 is impaired.

C. <u>Treatment</u>: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH TUCSON TRACTOR COMPANY AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN. Under §506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor, if eligible, elects to have it's claim treated as fully secured. The allowed amount of the Creditor's secured claim will be the lesser of value of the creditor's interest in the debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The debtor proposes to limit the Class 14 creditor's claim and to treat the claim in the same manner as a Class 15 unsecured creditor.

3.15 <u>Class 15 - Unsecured and Deficiency Claims.</u>

A. <u>Classification</u>: Class 15 consists of all unsecured claims and deficiency claims against the debtor. In the event Kennedy elects 11 U.S.C. § 1111(b)(2), its Class 15 claims shall not receive any interest or be allowed to vote for or against Debtor's Plan. Its 1111(b)(2) claim shall be treated and paid as set forth in Sources and Uses of cash and as a Class 19 claim.

B. <u>Impairment</u>: Class 15 is impaired.

C. <u>Treatment</u>: The Plan provides that each and every holder of a Class 15 Allowed Claim shall be paid the amount of their allowed claim in cash from lot sales or other sources, at one percent (1%) interest on the unpaid balance. Any liens held by the Class 15 creditors shall be null and void and removed as of the Effective Date.

3.16 <u>Class 16 - Interest of Equity Holders.</u>

29

A. Classification: Class 16 consists of the interest of the debtor.

B. Impairment: Class 16 is impaired.

C. Treatment: The debtor's equity holders shall be allowed to retain their current percentage of interest or a percentage thereof by becoming participating investors and contribute substantial capital required to fund this Plan and/or make capital improvements for the debtor  as allowed by debtors' Board of Directors.

3.17 Class 17 - Contingent, Unliquidated and Disputed Claims.

A. Classification: Class 17 consists of the claims of all contingent, unliquidated and disputed claims.

B. Impairment: Class 17 is impaired.

C. Treatment: Class 17 creditors shall receive no distribution under the Plan unless their claim is allowed.   If allowed, it shall be treated as a Class 17 claim for payment purposes only.

3.18 Class 18 - Claims of Participating Investors.

A. Classification: Class 18 consists of the claims of participating investors.

B. Impairment: Class 18 is impaired.

C. Treatment:  Participating investors may be required to contribute substantial capital required to fund this Plan and/or make capital improvements to the subject property, if any.

*ARTICLE IV*

*General Provisions*

4.1. Notwithstanding any other provision of this Plan, each claim

30

shall be paid only after it has been allowed in accordance with the Code.

   4.2  At the option of the Debtor, this Plan may be withdrawn at any time prior to the Effective Date of the Plan.  Such option shall be exercised by the filing in the case of a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case. If such option is timely and properly exercised, the case shall continue and be administered as if the Plan has been withdrawn prior to the confirmation.

   4.3  Pursuant to Section 1123(b)(3)(B) of the Code, the Debtor shall retain each and every claim, demand or cause of action whatsoever, which the Debtor had or had power to assert immediately prior to confirmation of the Plan, including without limitation, actions for the avoidance and recovery pursuant to Section 550 of the Code or transfers avoidable by reason of Sections 544, 545, 548, 549 or 553(b) of the Code, and may commence or continue in any appropriate court or tribunal and suit or other proceeding for the enforcement of same.

## ARTICLE V

*Means for Execution of the Plan*

   5.1  Continuation of the Debtor's Business: The Debtor, as reorganized, will retain all property of the estate, excepting property which is to be sold or otherwise disposed of as provided for herein (if applicable), executory contracts which are rejected pursuant to this Plan, and property transferred to creditors of the Debtor pursuant to the express terms hereof.  The retained property

shall be used and employed by the Debtor in the continuance of its business. (Further details concerning the nature and scope of the Debtor's future business operations may be found in the Disclosure Statement which accompanies the Plan.)

5.2 <u>Raising Additional Capital</u>: The Plan will be implemented by current owners and/or new Participating Investors making capital contributions to the Reorganized Debtor in the amount of $3,000,000.00 at Plan Confirmation.

5.3 <u>Incorporates Disclosure Statement Terms and Conditions</u>: Debtor incorporates all terms and conditions in Disclosure Statement relating to treatment of claims into this Plan of Reorganization. _____

## **ARTICLE VI**

*Provisions for the Assumption or Rejection of*
*Executory Contracts and Unexpired Leases*

The Debtor assumes all executory contracts or unexpired leases to which they are a party, except any specifically rejected prior to the hearing on the Disclosure Statement.

## **ARTICLE VII**

*Retention of Jurisdiction*

The Bankruptcy Court will retain jurisdiction over this case for purposes of determining the allowance of claims or interests or obligations thereto and for any other purpose which is contemplated in the Plan or which will otherwise assist in the consummation of the Plan. The Court also will retain jurisdiction for purposes of determining the allowance of any payment of any other claims or

administrative expenses.  The Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation or consummation of the Plan.  In addition, the Court shall retain jurisdiction for the following purposes:

a)   the classification of any claim or interest, the determination of such objections as may be filed to claims, or interest, and the re-examination of the allowance of any claim or interest;

b)   the correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan;

c)   to enforce and interpret the terms and conditions of this Plan;

d)   entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations and terms of such title, rights and powers as the Court may deem necessary;

e)   determination of any claims asserted by the Debtor against any other person or entity, including but not limited to any right of the Debtor to recover assets pursuant to the provisions of Title 11, if such claim is pursued in the Court prior to the closing of the case;

f)   determination of all questions and disputes concerning the sale, lease, encumbrancing or other transfer of the property of the Debtor; and

g)   entry of a final decree closing this case.

Notwithstanding anything to the contrary contained herein, the Debtor shall not be bound by estoppel, the principal of res judicata or collateral estoppel with respect to any term or provisions contained herein in the event the plan is not confirmed as set forth herein.

## *ARTICLE VIII*

### *Modification of the Plan*

This Plan may be modified in accordance with the provisions of the Bankruptcy Code and Chapter 11. In this regard:

a)   in accordance with Section 1127(a) of the Bankruptcy Code and Chapter 11, 11 U.S.C. Section 1127(a), modification(s) of the Plan may be proposed in writing by the Debtor at any time before its confirmation, provided that the Plan, as thus modified meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and Chapter 11, 11 U.S.C. Section 1122 and 1123; and provided further that the circumstances then existing justify such modification(s), and the Bankruptcy Court confirms the Plan as thus modified, under Section 1129 of the Bankruptcy Code and Chapter 11, 11 U.S.C. Section 1129;

b)   any holder(s) of a claim or equity interest(s) that has accepted or rejected the Plan will be deemed to have accepted or rejected, as the case may be, the Plan as modified unless, within the time fixed by the Bankruptcy Court for doing so, such holder(s) changes its previous acceptance or rejection; and

c)   every modification of the Plan will supersede the previous version(s) of the Plan as and whenever each such modification is effective provided in this Article. When superseded, the previous

34

version(s) of the Plans will be in the nature of a withdrawn or rejected settlement proposal(s), and will be null, void and unusable by the Debtor or any other party for any purpose(s) whatsoever with respect to any of the contents of such version(s) of the Plan.

## ARTICLE IX

### Miscellaneous Provisions

9.1  <u>Securities Law</u>: Any satisfaction or exchange provided to any creditor pursuant to this Plan which may be deemed to be a security is exempt from registration under certain state and federal securities laws pursuant to Section 1145 of the Code.  Absent registration or another exemption from the requirements of registration pursuant to the Securities Act of 1933, as amended, and any applicable state securities laws, the subsequent transfer of any such securities is not so exempt.

9.2  <u>Title to Property</u>: Upon confirmation, all assets of the Debtor will be reinvested in the Debtor.

9.3  <u>Curing of Defaults</u>: The confirmation of a plan shall result in the curing of any default to the holder of a claim or interest according to the terms and conditions of the Plan.

## ARTICLE X

### Closing of the Case

At such time as the case has been fully administered, that is, when all things requiring action by the Court have been done, and the Plan has been substantially consummated, this case shall be closed. To close the case the Debtor shall file an application for final decree showing that the case has been fully administered and that he

Plan has been substantially consummated.  The Court shall conduct a hearing upon the application after notice to all creditors, equity security holders and persons specially requesting notice, after which an order approving the Debtor's report and closing the case (final decree) may be entered.

In the period after confirmation but before closing of the case, the Debtor may continue to avail itself of the services of professional persons whose employment was approved at or prior to confirmation in completing administration of the case and in the consummation and performance of the Plan, and, if necessary, with approval of the Court employ additional professional persons to render services in and in connection with this case.  With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billings therefore to the Debtor which shall promptly pay the same, but each such payment shall be subject to review and approval by the Court as to reasonableness thereof, as set forth herein below.

In its application for final decree, the Debtor shall detail all amounts paid during such period to professional persons as compensation for services rendered or reimbursement of expenses incurred, and with respect to which no prior allowance thereof has been made by the Court.  At the hearing on the Debtor's application for final decree the Court shall consider and determine whether or not such payments shall be approved as reasonable.

Confirmation of this Plan shall constitute a discharge of any debt that arose prior to confirmation and any debt of any kind specified in Bankruptcy Code Section 502(g), (h) and (I), other than

those liabilities expressly to be assumed hereby by the Reorganized Debtor.

### *CONCLUSION*

The materials provided in the Disclosure Statement and Plan are intended to assist you in voting on the Plan in an informed fashion. If the Plan is confirmed, you will be bound by its terms; therefore, you are urged to review this material and to make such informed vote on the Plan.

DATED: March 16, 2011.

LAW OFFICES OF
*ERIC SLOCUM SPARKS, P.C.*

/s/ Sparks AZBAR #11726
Eric Slocum Sparks for Debtor