Eric Slocum Sparks
Arizona State Bar No. 11726
LAW OFFICES OF ERIC SLOCUM SPARKS, P.C.
110 South Church Avenue, #2270
Tucson, Arizona 85701
Telephone (520) 623-8330
Facsimile (520) 623-9157
eric@ericslocumsparkspc.com

Attorney for Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re:<br><br>SAGUARO RANCH DEVELOPMENT CORPORATION,<br><br>     Debtor. | ) ) ) ) ) ) ) ) | Jointly Administered Under Case No. 4:09-bk-02490-EWH Chapter 11 |
| In re:<br><br>PCC INVESTMENTS, LLC,<br><br>     Debtor. | ) ) ) ) ) ) | Case No. 4:09-bk-02484-EWH Chapter 11 |
| In re:<br><br>SAGUARO GUEST RANCH MANAGEMENT CORPORATION,<br><br>     Debtor. | ) ) ) ) ) ) ) ) | Case No. 4:09-bk-02489-EWH Chapter 11 |
| In re:<br><br>SAGUARO RANCH INVESTMENTS, LLC, | ) ) ) ) ) ) | Case No. 4:09-bk-02492-JMM Chapter 11 |
| In re:<br><br>SAGUARO RANCH REAL ESTATE CORPORATION,<br><br>     Debtor. | ) ) ) ) ) ) ) ) ) ) ) | Case No. 4:09-bk-02494-EWH Chapter 11<br><br>SUPPLEMENTAL DISCLOSURE TO SECOND AMENDED DISCLOSURE STATEMENT FOR DEBTOR'S THIRD AMENDED AND MODIFIED PLAN OF REORGANIZATION |

Debtor hereby addresses the following issues as directed by the

1

Court:

(1) **THE RELATIONSHIP OF ALL PURPORTED BUYERS TO THE DEBTOR AND ITS INSIDERS**: See Chart attached as Exhibit A.

(2) **THE LOT 50 BUYER'S DEVELOPMENT EXPERIENCE AND DEVELOPMENT PLAN FOR SITE:**

The Lot 50 buyer is purchasing two estate Lots 55 and 56 in addition to Lot 50, known as the Casita Lot. All of the properties this buyer is purchasing from Saguaro Ranch Development Company are cash purchases. There is currently $810,000.00 in the escrow account at the Title company for these purchases.

The buyer has discussed with Stephen Phinny, principal of the debtor, about developing and building casitas on the site after the Debtors' Plan is confirmed. He intends to retain a company that specializes in planning and developing the site for casitas to determine their viability in the current market. He will have the casitas developed and sold, if viable.

(3) **PROOF OF ALL BUYERS COMMITMENT TO CLOSE UPON PLAN APPROVAL:** See information provide as Exhibit B.

(4) **EVIDENCE ALL ALLEGED BUYERS ACTUALLY HAVE FUNDS TO CLOSE:** See information provided as Exhibit B.

(5) **HOW DEBTOR ADDRESSES THE RESTRICTION THAT LOT 50 CANNOT BE SPLIT:**

Debtor believed the intent of the parties was always to develop this parcel due to its proximity to McClintock's Restaurant, proposed spa and other amenities proposed by debtor. This site was originally intended to be a hotel and/or casita sites. No release price was set on the property as it was originally intended to be sold to a third

2

party for development or developed by the debtor and then sold. The debtor is working with the Planning Center and the Town of Marana to amend the required documents to allow for the division of the Lot. Debtor is informed that the entire process should take no longer than a few weeks to accomplish and Debtor has already received preliminary approval for a minor land division. Debtor anticipates this will be finalized prior to the hearing on confirmation. All of the proceeds from this sale will be paid to Kennedy Funding at closing. See attached letter confirmation - Town of Marana, pre-application, notes and land division concept as Exhibit C.

(6) **CONTINGENCY PLAN IF LOTS DO NOT CLOSE:**

Debtor has no reason to believe the sales currently in escrow will not close shortly after confirmation of debtors' plan of reorganization. Debtor is still actively marketing remaining lots and will continue to do so should the debtors' plan be confirmed. Lot sales will increase when Plan is confirmed and potential buyers know that Saguaro Ranch has confirmed its plan.

Additionally, the $3,000,000 in new money contribution allows the debtor to pursue aggressive marketing campaigns. The currently proposed lot sales are an additional jumpstart and certainly show that there is a demand for luxury estate lots at a market price.

As the 10 contracts in escrow show, debtor has maintained significant interest in future sales with over 2,000 prospects for lot sales. The plan, if confirmed, will enable the debtor to reach out to these and other prospects which the debtor believes will result in 18 lot sales each year. The debtor anticipates total lot sales of 20 to 28 lots in the first year after confirmation which includes the

3

current 10 pending sales under contract. The debtors' plan forecasts 20 lots in the first year after confirmation and 15 lot sales in each subsequent year. This more than meets the plan payment requirements under the Third Amended and Modified Plan of Reorganization.

(7) **EVIDENCE JUSTIFYING DEBTOR'S ABSORPTION RATES:**

Appraiser Bruce Greenburg states in his appraisal of the property that in the early years, a lot sale is anticipated every other month and every 1.5 months in the later years (pages 77 and 78 of appraisal). Greenburg's financial projections show show 12 lots sales in year one and year two, 14 in years three and four, 16 in years five and six, 18 in years seven and eight and 20 in year nine. The Greenburg appraisal was completed eight months ago when there were only 7 lot sale under contract. Today, there are 10 lot sale contracts. This combined with the current real estate economic data should comfortably support the debtor's projections. It is important to note that in spite of negative press generated by deterrents of Saguaro Ranch, there are sale contracts in escrow essentially proving that the debtor will be able to meet its sales projections.

DATED: April 22, 2011.

LAW OFFICES OF
*ERIC SLOCUM SPARKS, P.C.*


/s/ Sparks AZBAR #11726
Eric Slocum Sparks
Attorney for Debtors

COPIES of the foregoing
mailed/delivered/faxed
April 22, 2011, to:

Christopher J. Pattock, Esq.
UNITED STATES TRUSTEE

230 N. First Ave. #204
Phoenix, Arizona 85003

Sally M. Darcy, Esq.
McEvoy, Daniels & Darcy, P.C.
4560 E. Camp Lowell Dr.
Tucson, AZ 85712
Attorney for
Official Committee of Unsecured Creditors

Terri A. Roberts, Esq.
German Yusufov, Esq.
PIMA COUNTY ATTORNEY'S OFFICE
32 North Stone Avenue
Suite 2100
Tucson, AZ 85701
Attorneys for Pima County

George O. Krauja
Fennemore Craig, PC
1 S. Church Ave.
Suite 1000
Tucson, AZ 85701-1627
Attorneys for Kennedy Funding, Inc.
And Anglo-American Financial, LLC

All parties in interest and creditors
listed on the master mailing matrix

/s/ L. Anderson

5

EXHIBIT A

| Name of Purchaser | Relationship to Debtor | Contingencies | Lot to be Purchased | Sale Price |
|---|---|---|---|---|
| William C. Ford Chairman, Ford Motor Company | Prospective Purchaser Not Insider | Subject to Bankruptcy Court Approval | 47 | $550,000.00 |
| William C. Ford Chairman, Ford Motor Company | Prospective Purchaser Not Insider | Subject to Bankruptcy Court Approval | 81 | $550,000.00 |
| Stonehill Enterprises USA, Inc. | Prospective Purchaser Not Insider | Subject to Bankruptcy Court Approval | 50 - Casita Lot | $3,250,000.00 |
| Scott Lundberg Attorney | Prospective Purchaser Not Insider | Subject to Bankruptcy Court Approval | 53 | $485,000.00 |
| Stonehill Enterprises USA, Inc. | Prospective Purchaser Not Insider | Subject to Bankruptcy Court Approval | 55 | $500,000.00 |
| Stonehill Enterprises USA, Inc. | Prospective Purchaser Not Insider | Subject to Bankruptcy Court Approval | 56 | $600,000.00 |
| Dr. Russ J. Andaloro | Prospective Purchaser Not Insider | Subject to Bankruptcy Court Approval | 73 | $485,000.00 |
| Kathleen Ilyin | Prospective Purchaser Not Insider | Subject to Bankruptcy Court Approval | 75 | $400,000.00 |
| Realty Ideas Corp. | Prospective Purchaser Not Insider | Subject to Bankruptcy Court Approval | 82 | $500,000.00 |
| John M. Graham Attorney | Prospective Purchaser Not Insider | Subject to Bankruptcy Court Approval | 86 | $550,000.00 |
| Paul Leo Dennis | Prospective Purchaser Not Insider | Subject to Bankruptcy Court Approval | 87 | $490,000.00 |
| | | | Total Lots - 11 | Total $8,360,000.00 |

EXHIBIT B

# Letters Confirming Lot Purchases

1.) **William C. Ford, Jr.**
    Purchase of Lots 47 & 81

2.) **Stonehill Enterprises USA, Inc.**
    Purchase of Lots 55, 56 & Casita Property

3.) **Kathleen M. Ilyin**
    Purchase of Lot 75

4.) **Realty Ideas Corporation**
    Purchase of Lot 82

5.) **Dr. Russ J. Andaloro**
    Purchase of Lot 73

6.) **John M. Graham**
    Purchase of Lot 86

7.) **Paul L. Dennis**
    Purchase of Lot 87

8.) **Scott Lundberg**
    Purchase of Lot 53

1. William C. Ford, Jr.
Purchase of Lots 47 & 81

February 7, 2011

Eileen W. Hollowell
Bankruptcy Judge
United States Bankruptcy Court
District of Arizona
James A. Walsh Courthouse
38 South Scott Avenue, Room 100
Tucson, Arizona 85701-1704

Dear Judge Hollowell:

I am writing about my interest in two lots in Saguaro Ranch. As the Court is aware, I have contracted to purchase lots 47 and 81, subject to the Court's approval of the developer's plan of reorganization. This is to confirm that I will close my purchases upon Court approval of the plan, and I remain very interested in doing so. A major part of my interest in the lots stems from Stephen Phinny's vision for an environmentally sensitive development that favors open space. I am concerned that any other management will not carry out successfully this important mission, and I feel very strongly that Stephen should remain in control of the project. As Executive Chairman of Ford Motor Company I have a strong network of colleagues who may be interested in Saguaro Ranch, and if Stephen Phinny is in charge, I intend to promote and support the development as best I can.

Please feel free to contact me on this matter as needed. I will make myself available as needed for the Court.

Sincerely,

*Bill Ford*

William Clay Ford, Jr.



William Clay Ford, Jr.
Executive Chairman

Ford Motor Company
One American Road
Dearborn, MI 48126-2701 USA

April 13, 2011

Mr. Stephen D. Phinny
Saguaro Ranch Development Company
P.O. Box 70207
Tucson, Arizona 85737

Regarding Purchase of Lots 47 and 81

Dear Stephen,

This letter will confirm that I am waiting for the debtor's plan of re organization to be confirmed so that I can close on lots 47 and 81 and become the owner of the same.

I have sufficient funds available to close this transaction.

If you have any questions please feel free to contact me.

Sincerely,

# Title Security Agency of Arizona

## Escrow Ledger Report

| | |
|---|---|
| Escrow Number : | 448 |
| Escrow Officer : | Judy Susalla |
| Buyer/Seller : | Ford, Jr.,/Title Security Agency of Arizona, as trustee under Trust no. 773 |

| | |
|---|---|
| Opening Date : | 09/14/2010 |
| Order Closing Date : | |
| Trust Account Bank: | National Bank of Arizona |

| Payer/Payee | Ref No. | Date | Status | Instrument Type | Amount($) |
|---|---|---|---|---|---|
| **POSTED** | | | | | |
| **DEPOSITS** | | | | | |
| William C. Ford, Jr., | 6481 | 09/15/2010 | Deposited (c) | WIRE | 5,000.00 |
| | | | | Total Receipts | 5,000.00 |
| | | | | Total Fees | |
| | | | | Total Disbursements | |
| | | | | Balance | 5,000.00 |

| | |
|---|---|
| Grand Total for Receipts | 5,000.00 |
| Grand Total for Fees | |
| Grand Total for Disbursements | |
| Net Balance | 5,000.00 |

# Title Security Agency of Arizona

### Escrow Ledger Report

| | | |
|---|---|---|
| Escrow Number : | 188 | |
| Escrow Officer : | Judy Susalla | |
| Buyer/Seller : | Ford, Jr./Title Security Agency of Arizona, an Arizona corporation as trustee under Trust 773 | |

| | |
|---|---|
| Opening Date : | 07/20/2010 |
| Order Closing Date : | |
| Trust Account Bank: | National Bank of Arizona |

| Payer/Payee | Ref No. | Date | Status | Instrument Type | Amount($) |
|---|---|---|---|---|---|
| **POSTED** | | | | | |
| **DEPOSITS** | | | | | |
| William C. Ford, Jr. | 6460 | 09/15/2010 | Deposited (c) | WIRE | 5,000.00 |
| | | | | Total Receipts | 5,000.00 |
| | | | | Total Fees | |
| | | | | Total Disbursements | |
| | | | | Balance | 5,000.00 |
| | | | | Grand Total for Receipts | 5,000.00 |
| | | | | Grand Total for Fees | |
| | | | | Grand Total for Disbursements | |
| | | | | Net Balance | 5,000.00 |

2. Stonehill Enterprises USA, Inc.
Purchase of Lots 55, 56 & Casita Property

15 April 2011

Mr. Stephen D. Phinny

Saguaro Ranch Development Company

P.O. Box 70207

Tucson, Arizona 85737

Subject: Purchase of Lots 55 and 56 and the Casita Property

Dear Stephen,

This letter will confirm that I am waiting for the debtor's plan of reorganization to be confirmed so that I can close on lots 55, 56 and the Casita Property and become the owner of the same.

I have agreed to not break up and sell the Casita Property as individual Estate Lots for three (3) years.

I have sufficient funds available to close these transactions.

If you have any questions please feel free to contact me.

Sincerely,

Shih Chien Kiang

# Title Security Agency of Arizona

## Escrow Ledger Report

| | |
|---|---|
| Escrow Number : | :908 |
| Escrow Officer : | Judy Susalla |
| Buyer/Seller : | Stonehill Enterprises, LLC/ Title Security Agency of Arizona, an Arizona corporation, as trustee under Trust no. |

| | |
|---|---|
| Opening Date : | 04/02/2010 |
| Order Closing Date : | |
| Trust Account Bank: | National Bank of Arizona |

| Payer/Payee | Ref No. | Date | Status | Instrument Type | Amount($) |
|---|---|---|---|---|---|
| **POSTED** | | | | | |
| **DEPOSITS** | | | | | |
| Stonehill Enterprises, LLC | 20100405000003E | 04/05/2010 | Deposited (c) | WIRE | 60,000.00 |
| Stonehill Enterprises, LLC | 20110207000022E | 02/07/2011 | Deposited (c) | WIRE | 500,000.00 |

| | |
|---|---|
| Total Receipts | 660,000.00 |
| Total Fees | |
| Total Disbursements | |
| Balance | 660,000.00 |

| | |
|---|---|
| Grand Total for Receipts | 660,000.00 |
| Grand Total for Fees | |
| Grand Total for Disbursements | |
| Net Balance | 660,000.00 |

Keller Williams Southern Arizona Realty

# ADDENDUM 4



ARIZONA
REALTORS®
REAL SOLUTIONS. REALTOR® SUCCESS.

The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.

Document updated:
June 1993



1. This is an addendum originated by the: ☐ Seller ☒ Buyer ☐ Landlord ☐ Tenant.
2. This is an addendum to the Contract dated _____ April 1, 2010 _____ between the following Parties
3. Seller/Landlord: Saguaro Ranch Dev Corp                        MO/DA/YR
4. Buyer/Tenant: Stonehill Enterprises USA Inc
5. Premises: 14045 N Ranheim Place Lot 56, Marana, AZ 85658
6. The following additional terms and conditions are hereby included as a part of the Contract between Seller and Buyer for the above referenced Premises.

7. Both Buyer and Seller agree to the closing of 14045 N Ranheim Place Lot 55 shall be
8. not more then 30 days after the plan confirmation

9.
10.
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.
29.
30.
31.
32.
33.
34.
35.
36.
37.
38.
39.
40.
41.

42. The undersigned agrees to the additional terms and conditions and acknowledges receipt of a copy hereof.

43.
44. ☐ Seller ☒ Buyer          02/21/2011          ☐ Seller ☐ Buyer                MO/DA/YR
45. ☐ Landlord ☐ Tenant          MO/DA/YR          ☐ Landlord ☐ Tenant

46.                              02/21/2011
47. ☒ Seller ☐ Buyer          MO/DA/YR          ☐ Seller ☐ Buyer                MO/DA/YR
48. ☐ Landlord ☐ Tenant          ☐ Landlord ☐ Tenant

49. For Broker Use Only:
   Brokerage File/Log No. _____ Manager's Initials _____ Broker's Initials _____ Date _____
                                                                                          MO/DA/YR

Addendum · Updated: June 1993 · Copyright © 1993 Arizona Association of REALTORS®. All rights reserved.
Keller Williams Southern Arizona Realty 1880 E River Road Tucson, AZ 85718
Phone: 520.907.8775      Fax: 520.352.0222      Nancy A. Bailey                        Stonehill
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Keller Williams Southern Arizona Realty

# ADDENDUM 4

Document updated:
June 1993



ARIZONA
*association of*
REALTORS®
REAL SOLUTIONS. REALTOR® SUCCESS

The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®.
Any change in the pre-printed language of this form must be made in a prominent manner.
No representations are made as to the legal validity, adequacy and/or effects of any provision,
including tax consequences thereof. If you desire legal, tax or other professional advice, please
consult your attorney, tax advisor or professional consultant.

1. This is an addendum originated by the:  ☐ Seller  ☒ Buyer  ☐ Landlord  ☐ Tenant
2. This is an addendum to the Contract dated _____April 1, 2010_____ between the following Parties:
   MO/DA/YR
3. Seller/Landlord: Saguaro Ranch Dev Corp ,
4. Buyer/Tenant: Stonehill Enterprises USA Inc ,
5. Premises: 14045 N Ranheim Place Lot 55, Marana, AZ  85658
6. The following additional terms and conditions are hereby included as a part of the Contract between Seller and Buyer for the above referenced Premises:
7.
8. Both Buyer and Seller agree to the closing of 14045 N Ranheim Place Lot 55 shall be
9. not more then 30 days after the plan confirmation.
10.
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.
29.
30.
31.
32.
33.
34.
35.
36.
37.
38.
39.
40.
41.
42. The undersigned agrees to the additional terms and conditions and acknowledges receipt of a copy hereof.
43.
44. ☐ Seller  ☒ Buyer          02/21/2011              ☐ Seller  ☐ Buyer                MO/DA/YR
45. ☐ Landlord  ☐ Tenant        MO/DA/YR              ☐ Landlord  ☐ Tenant
46.
47. ☒ Seller  ☐ Buyer          02/21/2011              ☐ Seller  ☐ Buyer                MO/DA/YR
48. ☐ Landlord  ☐ Tenant        MO/DA/YR              ☐ Landlord  ☐ Tenant

49. For Broker Use Only:
    Brokerage File/Log No. _____  Manager's Initials _____  Broker's Initials _____  Date _____
                                                                                          MO/DA/YR

Addendum • Updated: June 1993 • Copyright © 1993 Arizona Association of REALTORS®. All rights reserved.

Keller Williams Southern Arizona Realty 1880 E River Road Tucson, AZ 85718
Phone: 520.907.6775       Fax: 520.352.0222       Nancy A. Bailey                    Stonehill
Produced with ZipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



# Title Security Agency of Arizona

## Escrow Ledger Report

| | | | | | |
|---|---|---|---|---|---|
| Escrow Number : | 304 | | | Opening Date : | 02/09/2011 |
| Escrow Officer : | Judy Susalla | | | Order Closing Date : | |
| Buyer/Seller : | Stonehill Enterpises USA, Inc/Title Security Agency of Arizona as trustee under Trust no. 773 | | | Trust Account Bank: | National Bank of Arizona |

| Payer/Payee | Ref No. | Date | Status | Instrument Type | Amount(S) |
|---|---|---|---|---|---|
| **POSTED** | | | | | |
| **DEPOSITS** | | | | | |
| Stonehill Enterprises USA, Inc | 201102140000587 | 02/14/2011 | Deposited (c) | WIRE | 150,000.00 |
| | | | | Total Receipts | 150,000.00 |
| | | | | Total Fees | |
| | | | | Total Disbursements | |
| | | | | Balance | 150,000.00 |
| | | | | Grand Total for Receipts | 150,000.00 |
| | | | | Grand Total for Fees | |
| | | | | Grand Total for Disbursements | |
| | | | | Net Balance | 150,000.00 |




# VACANT LAND/LOT
# PURCHASE CONTRACT

If subdivided land (less than 36 acres) or unsubdivided land (36 acres to 160 acres) is being sold by a subdivider, i.e., a person who owns 6 or more lots, a public report will generally be required and an Addendum regarding subdivided or unsubdivided land must be executed by the Seller and Buyer.

The printed portion of this contract has been approved by the ARIZONA ASSOCIATION OF REALTORS® ("AAR") This is intended to be a binding contract. No representation is made as to the legal validity or adequacy of any provision or the tax consequences thereof. If you desire legal, tax or other professional advice, consult your attorney, tax advisor, insurance agent or professional consultant.

## 1. PROPERTY

1a.
1. BUYER: Stonehill Enterprises USA, Inc _____ or ☐ as identified in Section 9c.
BUYER'S NAME(S)

2. SELLER: Saguaro Ranch Development Corp _____
SELLER'S NAME(S)

3. Buyer agrees to buy and Seller agrees to sell the real property with all improvements, fixtures, and appurtenances thereon
4. or incidental thereto, if any, plus the personal property described herein (collectively the "Property").

1b.
5. Property Address: SR Lot 50 less approx .9+ ac.line307 _____ Zoning: _____

6. Assessor's #: 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 _____ / _____

7. City: Marana _____ County: Pima _____ AZ, Zip Code: 85658

8. Legal Description: See comments in Section 8 _____ or ☐ see attached legal description.

1c.
9. $ 3,250,000.00 Full Purchase Price, paid as outlined below
10. $ 150,000.00 Earnest money _____
11. $ 3,100,000.00 Cash at close of escrow _____
12. $ _____
13. _____

1d.
14. Incidental Improvements: Buyer is purchasing the Property as vacant land. Any improvements, fixtures and appurtenances
15. thereon are incidental thereto, plus any personal property on the Property are merely incidental, are being transferred in their
16. existing condition ("AS IS") and Seller makes no warranty to Buyer, expressed or implied, as to their condition.

1e.
17. Close of Escrow: Close of Escrow ("COE") shall occur when the deed is recorded at the appropriate county recorder's office.
18. Buyer and Seller shall comply with all terms and conditions of this Contract, execute and deliver to Escrow Company all
19. closing documents, and perform all other acts necessary in sufficent time to allow COE to occur on
20. see Section 8 _____ ("COE Date"). If Escrow Company or recorder's office is closed on
MONTH        DAY        YEAR
21. COE Date, COE shall occur on the next day that both are open for business.

22. Buyer shall deliver to Escrow Company a cashier's check, wired funds or other immediately available funds to pay any down
23. payment, additional deposits or Buyer's closing costs, and instruct the lender, if applicable, to deliver immediately available funds
24. to Escrow Company, in a sufficient amount and in sufficient time to allow COE to occur on COE Date.

1f.
25. Possession: Seller shall deliver access to keys and/or means to operate all locks, mailbox, and all common area facilities, subject to
26. the rights of tenants under existing leases, to Buyer at COE or ☐ _____ . Broker(s) recommend that the parties seek appropriate
27. counsel from insurance, legal, tax, and accounting professionals regarding the risks of pre-possession or post-possession of the Property.

1g.
28. Addenda Incorporated: ☐ Assumption/Carryback  ☐ Buyer Contingency  ☐ Domestic Water Well  ☐ H.O.A.
29. ☐ Additional Clause  ☐ On-site Wastewater Treatment Facility  ☐ Addendum to Vacant Land
30. ☐ Other: _____
31. IF THIS IS AN ALL CASH SALE, GO TO SECTION 3.

Initials: _____ / _____        ©ARIZONA ASSOCIATION OF REALTORS®        Initials: _____ / _____
SELLER    SELLER                                Form VLPC 8/07                          BUYER    BUYER

Conlin Real Estate Services LL 6571 N. Silversmith Pl Tucson, AZ 85750
Phone: 520.539.4691        Fax: 520.539.0227        Michael Conlin
Produced with ZipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026        www.zipLogix.com        Purchase Agreement

# 2. FINANCING

(If financing is to be other than new financing, see attached addendum.)

2a. 32. **Loan Status Report:** The AAR Vacant Land/Lot Loan Status Report ("LSR") with, at a minimum, the Buyer's Loan Information section
33. completed, describing the current status of the Buyer's proposed loan, is attached hereto and incorporated herein by reference.

2b. 34. **Financing:** This sale ☐ is ☒ is not contingent upon Buyer obtaining a satisfactory financing commitment within Financing
35. Commitment Contingency Period. (If sale is not contingent on a financing commitment, go to Section 2g.)

2c. 36. **Financing Commitment Contingency Period:** If the sale is contingent upon Buyer obtaining a satisfactory financing
37. commitment, Buyer shall have thirty (30) days or ☐ _____ days after the Contract acceptance ("Financing Commitment
38. Contingency Period") to obtain a financing commitment satisfactory to Buyer in Buyer's sole discretion, for a loan to purchase the
39. Property or Buyer may cancel this Contract and receive a refund of the Earnest Money. PRIOR TO THE EXPIRATION OF THE FINANC-
40. ING COMMITMENT CONTINGENCY PERIOD, BUYER SHALL DELIVER TO SELLER AND ESCROW COMPANY NOTICE THAT
41. BUYER HAS NOT RECEIVED SUCH SATISFACTORY FINANCING COMMITMENT OR BUYER SHALL BE DEEMED TO HAVE
42. WAIVED THE FINANCING COMMITMENT CONTINGENCY AND ANY RIGHT TO CANCEL DUE TO FINANCING.

2d. 43. **Financing Application:** Unless previously completed, within ten (10) days or ☐ _____ after Contract acceptance, Buyer shall
44. submit a formal loan application to a lender of Buyer's choice. Buyer and Seller shall promptly provide to such lender all materials
45. and documents lender deems appropriate to facilitate such lender's processing of such loan application. Buyer instructs the lender
46. to provide loan status updates to Broker(s) and Seller. The AAR Loan Status Update Form is available for this purpose.

2e. 47. **Appraisal Contingency:** Buyer's obligation to complete this sale is contingent upon an appraisal of the Property by an appraiser
48. acceptable to lender for at least the sales price during the Financing Commitment Contingency Period.

2f. 49. **Loan Costs:** Buyer shall pay all costs of obtaining the loan, except as provided herein.
50. Discount points shall be paid by: ☐ Buyer ☐ Seller ☐ Other _____
51. Discount points shall not exceed: _____ total points (Does not include loan origination fee)
52. A.L.T.A. Lender Title Insurance Policy shall be paid by ☐ Buyer ☐ Seller
53. Loan Origination Fee (Not to exceed _____ % of loan amount) shall by paid by ☐ Buyer ☐ Seller
54. Appraisal Fee, when required by lender, shall be paid by ☐ Buyer ☐ Seller ☐ Other _____

2g. 55. **Partial Release:** Buyer and Seller agree that any partial releases will be addressed under Additional Terms and Conditions
56. or attached Addendum.

2h. 57. **Subordination:** If applicable, Seller carryback financing ☐ is ☐ is not to be subordinated to a construction loan. If Seller
58. agrees to subordination, such subordination shall only be allowed if the Seller Carryback financing is not in default and if the
59. Seller approves the terms and conditions of the construction loan to be recorded as a senior loan. Approval will not be
60. unreasonably withheld. IF SELLER SUBORDINATES THE SELLER CARRYBACK FINANCING TO A SENIOR LOAN, THE
61. SELLER ACKNOWLEDGES THAT IN ORDER TO PROTECT THE SELLER CARRYBACK FINANCING, THE SELLER
62. MAY HAVE TO MAKE PAYMENTS ON THE SENIOR LOAN IF THE SENIOR LOAN IS IN DEFAULT.

# 3. TITLE AND ESCROW

3a. 63. **Escrow:** This Contract shall be used as escrow instructions. The Escrow Company employed by the parties to carry out the
64. terms of this Contract shall be:

65. Judy Susalla at Title Security                    (520) 747 1644
ESCROW/TITLE COMPANY                                 PHONE

66. (520) 901 1215                    susallaj@titlesecurity.com
FAX                                EMAIL

67. 2730 E. Broadway, Tucson. AZ  85716
ADDRESS

3b. 68. **Title and Vesting:** Buyer will take title as determined before COE. Taking title may have significant legal, estate planning
69. and tax consequences. Buyer should obtain legal and tax advice.

3c. 70. **Title Commitment and Title Insurance:** Escrow Company is hereby instructed to obtain and deliver to Buyer and Seller directly,
71. addressed pursuant to 8s and 9c or as otherwise provided, a Commitment for Title Insurance in sufficient detail for the issuance
72. of an Extended Owner's Title Insurance Policy together with complete and legible copies of all documents that will

Initials: _____ / _____                ©ARIZONA ASSOCIATION OF REALTORS®              Initials: _____ / _____
SELLER    SELLER                          Form VLPC 8/07                                  BUYER    BUYER

                                                                                          Purchase Agreement

73. remain as exceptions to Buyer's policy of Title Insurance ("Title Commitment"), within fifteen (15) days after Contract acceptance.

74. Buyer shall have five (5) days after receipt of Title Commitment and after receipt of notice of any subsequent exceptions to pro-

75. vide notice to Seller of any items disapproved. Buyer shall be provided at Seller's expense a Standard Owner's Title Insurance

76. Policy showing the title vested in Buyer. Buyer may acquire extended coverage(s) at Buyer's own additional expense.

77. Seller shall convey title by general warranty deed or [X] Special Warranty Deed deed.

**3d.** 78. **Additional Instructions:** (i) Escrow Company shall promptly furnish notice of pending sale that contains the name and address

79. of the Buyer to any homeowner's association in which the Property is located. (ii) If the Escrow Company is also acting as the title

80. agency but is not the title insurer issuing the title insurance policy, Escrow Company shall deliver to the Buyer and Seller, upon

81. deposit of funds, a closing protection letter from the title insurer indemnifying the Buyer and Seller for any losses due to fraudu-

82. lent acts or breach of escrow instructions by the Escrow Company. (iii) All documents necessary to close this transaction shall be

83. executed promptly by Seller and Buyer in the standard form used by Escrow Company. Escrow Company shall modify such doc-

84. uments to the extent necessary to be consistent with this Contract. (iv) Escrow Company fees, unless otherwise stated herein,

85. shall be allocated equally between Seller and Buyer. (v) Escrow Company shall send to all parties and Broker(s) copies of all

86. notices and communications directed to Seller, Buyer and Broker(s). (vi) Escrow Company shall provide Broker(s) access to

87. escrowed materials and information regarding the escrow. (vii) If an Affidavit of Disclosure is provided, Escrow Company shall

88. record the Affidavit at COE.

**3e.** 89. **Prorations, Expenses and Adjustments:**

90. *Taxes:* Real property taxes payable by the Seller shall be prorated through COE, based upon the latest tax bill available. The

91. parties agree that any discrepancy between the latest tax bill available and the actual tax bill when received shall be handled

92. as a Post Closing Matter and Buyer or Seller may be responsible for additional tax payments to each other.

93. *Insurance:* If Buyer takes an assignment of the existing casualty and/or liability insurance that is maintained by Seller, the

94. current premium shall be prorated through COE.

95. *Rents, Interest and Expenses:* Rents; interest on existing notes, if transferred; utilities; and operating expenses shall be pro-

96. rated through COE. The Parties agree to adjust any rents received after COE as a Post Closing Matter.

97. *Deposits:* All deposits held by Seller pursuant to rent/lease agreement(s) shall be credited against the cash required of Buyer

98. at COE or [ ] paid to Buyer by Seller at COE.

**3f.** 99. **Post Closing Matters:** The parties shall promptly adjust any item to be prorated that is not determined or determinable at COE as

100. a Post Closing Matter by appropriate cash payment to the other party outside of the escrow when the amount due is

101. determined. Seller and Buyer agree that Escrow Company and Broker(s) are relieved of any responsibility for said adjustments.

**3g.** 102. **Release of Earnest Money:** In the event of a dispute between Buyer and Seller regarding any Earnest Money deposited with Escrow

103. Company, Buyer and Seller authorize Escrow Company to release Earnest Money pursuant to the terms and conditions of this

104. Contract in its sole and absolute discretion. Buyer and Seller agree to hold harmless and indemnify Escrow Company against any

105. claim, action or lawsuit of any kind, and from any loss, judgment, or expense, including costs and attorney fees, arising from or

106. relating in any way to the release of Earnest Money.

**3h.** 107. **Insurance:** Buyer shall ensure that any fire, casualty, or other insurance desired by Buyer, or required by any Lender, is in

108. place at COE. Buyer specifically releases Broker(s) from any obligations relating to such insurance.

**3i.** 109. **Assessment Liens:** The amount of any assessment, other than homeowner's association assessments, that is a lien as of

110. the COE shall be: [X] paid in full by Seller [ ] prorated and assumed by Buyer [ ] paid in full by Buyer. Any assessment

111. that becomes a lien after COE is the Buyer's responsibility.

**3j.** 112. **IRS and FIRPTA Reporting:** Seller agrees to comply with IRS reporting requirements. If applicable, Seller agrees to complete, sign,

113. and deliver to Escrow Company a certificate indicating whether Seller is a foreign person or a non-resident alien pursuant to the

114. Foreign Investment in Real Property Tax Act (FIRPTA). Buyer and Seller acknowledge that if the Seller is a foreign person, the Buyer

115. (or Escrow Company, as directed by Buyer) must withhold a tax equal to 10% of the purchase price, unless an exemption applies.

**3k.** 116. **Agricultural Foreign Investment Disclosure Act:** If applicable, Buyer and Seller shall comply with the Agricultural Foreign

117. Investment Disclosure Act and make the required disclosures to the U.S. Department of Agriculture.

**3l.** 118. **TAX DEFERRED EXCHANGE:** Seller and Buyer are advised to consult a professional tax advisor regarding the advisability

119. of a tax-deferred exchange pursuant to I.R.C. §1031 or otherwise. Seller and Buyer agree to cooperate in a tax deferred

120. exchange provided that COE is not delayed. All additional costs in connection with any such tax deferred exchange shall be

121. borne by the party requesting the exchange. The non-requesting party and Broker(s) shall be indemnified and held harmless

122. from any liability that may arise from participation in the tax deferred exchange.

Initials: SELLER SELLER | ©ARIZONA ASSOCIATION OF REALTORS® Form VLPC 8/07 | Initials: BUYER BUYER

# 4. DISCLOSURES

**4a.** 123. Vacant Land/Lot Seller Property Disclosure Statement ("VLSPDS"): Seller shall deliver a completed AAR VLSPDS form
124. to the Buyer within five (5) days after Contract acceptance. Buyer shall provide notice of any SPDS items disapproved with-
125. in the Inspection Period or five (5) days after receipt of the SPDS, whichever is later.

**4b.** 126. Additional Seller Disclosures and Information: Seller shall provide to Buyer the following disclosures and information pertinent
127. to the Property within five (5) days after the Contract acceptance: (i) any information known to Seller that may adversely affect the
128. Buyer's use of the Property, (ii) any known pending special assessments, association fees, claims, or litigation, (iii) articles of incor-
129. poration, by-laws, other governing documents, and any other documents required by law, (iv) financial statements, current rent-rolls,
130. lists of current deposits, personal property lists, leases, rental agreements, service contracts, (v) soils, Phase I, or other environ-
131. mental reports in Seller's possession, (vi) the most recent survey, if available, and (vii) any and all other agreements, documents,
132. studies, or reports relating to the Property in Seller's possession or control provided, however, that Seller shall not be required to
133. deliver any report or study if the written contract that Seller entered into with the consultant who prepared such report or study
134. specifically forbids the dissemination of the report to others.

**4c.** 135. Road Maintenance Agreement: Seller shall provide to Buyer, within five (5) days after the Contract acceptance, a copy
136. of any known road maintenance agreement affecting the Property.

**4d.** 137. Seller's Obligations Regarding Wells: If a well is located on the Property, or if the Property is to be served by a shared well,
138. the AAR Domestic Water Well Addendum is attached hereto and incorporated by reference. At COE, if applicable, Seller shall
139. assign, transfer and convey to the Buyer all of the water rights, or claims to water rights, if any, held by Seller that are asso-
140. ciated with the Property.

**4e.** 141. No Seller or Tenant Bankruptcy, Probate or Insolvency Proceedings: Seller represents that Seller has no notice or knowl-
142. edge that any tenant on the Property is the subject of a bankruptcy, probate or insolvency proceeding. Further, Seller is not
143. the subject of a bankruptcy, insolvency or probate proceeding.

**4f.** 144. Seller's Notice of Violations: Seller represents that Seller has no knowledge of any notice of violations of City, County, State, or
145. Federal building, zoning, fire, or health laws, codes, statutes, ordinances, regulations, or rules filed or issued regarding the Property.

**4g.** 146. Environmental Disclosure: Seller has only not knowingly caused or permitted the generation, storage, treatment, release or disposal of
147. any hazardous waste or regulated substances at the Property except as otherwise disclosed.

**4h.** 148. Affidavit of Disclosure: If the Property is located in an unincorporated area of the county, and five or fewer parcels of
149. property other than subdivided land are being transferred, the Seller shall deliver a completed Affidavit of Disclosure in the
150. form required by law to the Buyer within five (5) days after Contract Acceptance. Buyer shall provide notice of any Affidavit
151. of Disclosure items disapproved within the Inspection Period or five (5) days after receipt of the Affidavit of Disclosure, whichever
152. is later.

**4i.** 153. H.O.A. / Condominium / Planned Community: The Property ☒ is ☐ is not located within a homeowners' association/
154. condominium/planned community. If yes, the HOA addendum is attached hereto and incorporated by reference.

**4j.** 155. Changes During Escrow: Seller shall immediately notify Buyer of any changes in the Property or disclosures made herein, in
156. the SPDS, or otherwise. Such notice shall be considered an update of the SPDS. Unless Seller is already obligated by
157. Section 5a, or otherwise by this Contract or any amendments hereto, to correct or repair the changed item disclosed, Buyer
158. shall be allowed five (5) days after delivery of such notice to provide notice of disapproval to Seller.

# 5. WARRANTIES

**5a.** 159. Seller Warranties: Seller warrants and shall maintain and repair the Property so that at the earlier of possession or COE the
160. Property and any personal property included in the sale, will be in substantially the same condition as on the date of Contract
161. acceptance; and all personal property not included in the sale and all debris will be removed from the Property.

**5b.** 162. Warranties that Survive Closing: Seller warrants that Seller has disclosed to Buyer and Broker(s) all material latent defects
163. and any information concerning the Property known to Seller, excluding opinions of value, which materially and adversely
164. affect the consideration to be paid by Buyer. Prior to the COE, Seller warrants that payment in full will have been made for
165. all labor, professional services, materials, machinery, fixtures, or tools furnished within the 150 days immediately preceding
166. the COE in connection with the construction, alteration, or repair of any structure on or improvement to the Property. Seller
167. warrants that the information regarding connection to a sewer system or on-site wastewater treatment facility (conventional
168. septic or alternative) is correct to the best of Seller's knowledge.

5c. 169. **Buyer Warranties:** Buyer warrants that Buyer has disclosed to Seller any information that may materially and adversely affect the
170. Buyer's ability to close escrow or complete the obligations of this Contract. At the earlier of possession of the Property or COE,
171. Buyer warrants to Seller that Buyer has conducted all desired independent inspections and investigations and accepts the
172. Property. Buyer warrants that Buyer is not relying on any verbal representations concerning the Property
173. except disclosed as follows: _____
174. _____

# 6. DUE DILIGENCE

6a. 175. **Inspection Period:** Buyer's Inspection Period shall be fifteen (15) days or _____7_____ days after the Contract acceptance.
176. During the Inspection Period, Buyer, at Buyer's expense, shall: (i) conduct all desired physical, environmental, and other
177. types of inspections and investigations to determine the value and condition of the Property; (ii) make inquiries and consult
178. government agencies, lenders, insurance agents, architects, and other appropriate persons and entities concerning the fea-
179. sibility and suitability of the Property for the Buyer's intended purpose and the surrounding area; (iii) investigate applicable
180. building, zoning, fire, health, and safety codes including applicable swimming pool barrier regulations to determine any poten-
181. tial hazards, violations or defects in the Property; and (iv) verify any material multiple listing service ("MLS") information. If
182. the presence of sex offenders in the vicinity or the occurrence of a disease, natural death, suicide, homicide or other crime
183. on or in the vicinity is a material matter to the Buyer, it must be investigated by the Buyer during the Inspection Period. Buyer
184. shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from all liability, claims, demands,
185. damages, and costs; and shall repair all damages arising from the inspections. Buyer shall provide Seller and Broker(s) upon
186. receipt, at no cost, copies of all inspection reports concerning the Property obtained by Buyer. If Buyer cancels this Contract,
187. Buyer shall return all documents provided by the Seller and provide Seller with copies of all reports or studies generated by
188. Buyer, provided, however, that Buyer shall not be required to deliver any such report or study if the written contract that Buyer
189. entered into with the consultant who prepared such report or study specifically forbids the dissemination of the report or study
190. to others. Buyer is advised to consult the Arizona Department of Real Estate *Buyer Advisory* provided by AAR to assist in
191. Buyer's due diligence inspections and investigations.

6b. 192. **Square Footage/Acreage:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE/ACREAGE OF
193. THE PROPERTY, BOTH THE REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON IS APPROXIMATE.
194. IF SQUARE FOOTAGE/ACREAGE IS A MATERIAL MATTER TO THE BUYER; IT MUST BE INVESTIGATED DURING
195. THE INSPECTION PERIOD.

6c. 196. **Flood Hazard:** Flood hazard designations or the cost of flood hazard insurance shall be determined by Buyer during the
197. Inspection Period. If the Property is situated in an area identified as having any special flood hazards by any governmental
198. entity, the lender may require the purchase of flood hazard insurance. Special flood hazards may also affect the ability to
199. encumber or improve the Property.

6d. 200. **Sewer or On-site Wastewater Treatment System:** The Property ☐ does ☒ does not contain an on-site wastewater
201. treatment system. If the Property is served by a septic or alternative system, the AAR On-site Wastewater Treatment Facility
202. Addendum is incorporated herein by reference.

203. IF A SEWER CONNECTION, OR THE AVAILABILITY OF A SEWER CONNECTION, IS A MATERIAL MATTER TO THE
204. BUYER, IT MUST BE INVESTIGATED DURING THE INSPECTION PERIOD. (BUYER'S INITIALS REQUIRED)

|  |
|---|
| BUYER    BUYER |

6e. 206. **Site/Soil Evaluation:** A site/soil evaluation (which may include percolation or other tests) ☐ shall ☒ shall not be
207. performed to determine the suitability of the Property for installation of an on-site wastewater treatment facility.

208. If site/soil evaluation is to be performed, ☐ Seller ☐ Buyer shall complete site/soil evaluation within Inspection Period
209. or ☐ _____ days after Contract acceptance and the cost of the site/soil evaluation shall be paid by
210. ☐ Seller ☐ Buyer or ☐ Other: _____

211. Buyer and Seller are aware that the site/soil evaluation is intended to determine whether an on-site wastewater treatment
212. facility can be installed on the Property in accordance with state laws, rules and regulations, however, the site/soil evaluation
213. is not binding on the State-delegated County agency in any future permitting decision as to the suitability of the design or
214. type of facility for the Property. Buyer shall have five (5) days after receipt of the site/soil evaluation report to provide notice
215. of disapproval to the Seller.

| Initials: | | |
|---|---|---|
| SELLER | SELLER | |

©ARIZONA ASSOCIATION OF REALTORS®
Form VLPC 8/07

| Initials: | | |
|---|---|---|
| BUYER | BUYER | |

Produced with ZipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Purchase Agreement

6f. 216. LAND DIVISIONS: LAND PROPOSED TO BE DIVIDED FOR PURPOSES OF SALE OR LEASE IS SUBJECT TO STATE,
217. COUNTY AND MUNICIPAL LAWS, ORDINANCES AND REGULATIONS. IF STATE, COUNTY AND MUNICIPAL
218. REQUIREMENTS RELATING TO THE DIVISION OR SPLITTING OF THE PROPERTY ARE A MATERIAL MATTER TO
219. THE BUYER, THEY MUST BE VERIFIED BY BUYER DURING THE INSPECTION PERIOD. BROKER(S) HAVE MADE
220. NO REPRESENTATIONS, EXPRESS OR IMPLIED, REGARDING THE ABILITY TO DIVIDE OR SPLIT THE PROPERTY.
221. (BUYER'S INITIALS REQUIRED)

BUYER      BUYER

6g. 222. ROADS: IF ROADWAYS, COST AND RESPONSIBILITY FOR ROAD MAINTENANCE, IMPROVEMENTS OR ACCESS IS
223. A MATERIAL MATTER TO BUYER, IT MUST BE INVESTIGATED BY BUYER DURING INSPECTION PERIOD.

6h. 224. Survey: A survey ☒ shall ☐ shall not be performed. If yes, the survey shall be performed by a licensed surveyor
225. within the Inspection Period or _____ days after Contract acceptance.

226. Cost of the survey shall be paid by ☒ Seller ☐ Buyer ☐ Other: _____

227. The survey shall be performed in accordance with the Arizona State Board of Technical Registration's "Arizona Land
228. Boundary Survey Minimum Standards".

6i. 229. Survey instructions are:
     ☒ A boundary survey and survey plat showing the corners either verified
230.      or monumentation.
231.      ☒ A survey certified by a licensed surveyor, acceptable to Buyer and the Title
232.      Company, in sufficient detail for an American Land Title Association ("ALTA")
233.      Owner's Policy of Title Insurance with boundary, encroachment or survey except-
234.      tions and showing all improvements, utility lines and easements on the Property
235.      or within five (5) feet thereof.
236.      ☒ Other survey terms: See comments in Section 8 of this contract
237. _____
238. _____
239. _____
240. Buyer shall have five (5) days after receipt of results of survey or map to provide written notice of disapproval to the Seller.
241. (BUYER'S INITIALS REQUIRED)

BUYER      BUYER

6j. 242. WELL WATER/WATER RIGHTS: IF WELL WATER/WATER RIGHTS IS/ARE A MATERIAL MATTER TO THE BUYER, IT
243. MUST BE VERIFIED BY BUYER DURING THE INSPECTION PERIOD.

6k. 244. BUYER ACKNOWLEDGMENT: BUYER RECOGNIZES, ACKNOWLEDGES AND AGREES THAT BROKER(S) ARE NOT
245. QUALIFIED, NOR LICENSED, TO CONDUCT DUE DILIGENCE WITH RESPECT TO THE PROPERTY OR THE SUR-
246. ROUNDING AREA. BUYER IS INSTRUCTED TO CONSULT WITH QUALIFIED LICENSED PROFESSIONALS TO
247. ASSIST IN BUYER'S DUE DILIGENCE EFFORTS. BECAUSE CONDUCTING DUE DILIGENCE WITH RESPECT TO THE
248. PROPERTY AND SURROUNDING AREA IS BEYOND THE SCOPE OF THE BROKERS EXPERTISE AND LICENSING,
249. BUYER EXPRESSLY RELEASES AND HOLDS HARMLESS BROKER(S) FROM LIABILITY FOR ANY DEFECTS OR
250. CONDITIONS THAT COULD HAVE BEEN DISCOVERED BY INSPECTION OR INVESTIGATION.
251. (BUYER'S INITIALS REQUIRED)

BUYER      BUYER

6l. 252. Inspection Period Notice: Prior to expiration of the Inspection Period, Buyer shall deliver to Seller a signed notice of any
253. items disapproved. The AAR Vacant Land/Lot Buyer's Inspection Notice and Seller's Response Form is available for this
254. purpose. Buyer shall conduct all desired inspections and investigations prior to delivering such notice to Seller and all
255. Inspection Period items disapproved shall be provided in a single notice.

6m. 256. Buyer Disapproval: If Buyer, in Buyer's sole discretion, disapproves of item(s) as allowed herein, Buyer shall deliver
257. to Seller notice of the items disapproved and state in the notice that Buyer elects to either:
258.      (1) immediately cancel this Contract and all Earnest Money shall be released to Buyer, or
259.      (2) provide the Seller an opportunity to correct the items disapproved, in which case:
260.          (a) Seller shall respond in writing within five (5) days or _____ days after delivery to Seller of Buyer's notice of
261.          items disapproved. Seller's failure to respond to Buyer in writing within the specified time period shall
262.          conclusively be deemed Seller's refusal to correct any of the items disapproved.
263.          (b) If Seller agrees in writing to correct item(s) disapproved, Seller shall correct the items, complete any
264.          repairs in a workmanlike manner and deliver any paid receipts evidencing the corrections and repairs
265.          to Buyer three (3) days or _____ days prior to COE Date.

| Initials: | | ©ARIZONA ASSOCIATION OF REALTORS® | Initials: | |
|---|---|---|---|---|
| SELLER | SELLER | Form VLPC 8/07 | BUYER | BUYER |

266.    (c) If Seller is unwilling or unable to correct any of the items disapproved, Buyer may cancel this Contract within five
267.    (5) days after delivery of Seller's response or after expiration of the time for Seller's response, whichever occurs first,
268.    and all Earnest Money shall be released to Buyer. If Buyer does not cancel this Contract within the five (5) days as
269.    provided, Buyer shall close escrow without correction of those items that Seller has not agreed in writing to correct.

270.  VERBAL DISCUSSIONS WILL NOT EXTEND THESE TIME PERIODS. Only a written agreement signed by both parties will
271.  extend response times or cancellation rights.

272.  BUYER'S FAILURE TO GIVE NOTICE OF DISAPPROVAL OF ITEMS OR CANCELLATION OF THIS CONTRACT WITHIN
273.  THE SPECIFIED TIME PERIOD SHALL CONCLUSIVELY BE DEEMED BUYER'S ELECTION TO PROCEED WITH THE
274.  TRANSACTION WITHOUT CORRECTION OF ANY DISAPPROVED ITEMS.

6n.  275.  Inspection(s): Seller grants Buyer and Buyer's inspector(s) reasonable access to conduct inspection(s) of the Property for
276.  the purpose of satisfying Buyer that any corrections agreed to by the Seller have been completed and that the Property is in
277.  substantially the same condition as on the date of Contract acceptance. If Buyer does not conduct such
278.  inspection(s), Buyer releases Seller and Broker(s) from liability for any defects that could have been discovered.

# 7. REMEDIES

7a.  279.  Cure Period: A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any
280.  provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If
281.  the non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall
282.  become a breach of Contract.

7b.  283.  Breach: In the event of a breach of Contract, the non-breaching party may cancel this Contract and/or proceed against the
284.  breaching party in any claim or remedy that the non-breaching party may have in law or equity, subject to the Alternative
285.  Dispute Resolution obligations set forth herein. In the case of the Seller, because it would be difficult to fix actual damages in
286.  the event of Buyer's breach, the Earnest Money may be deemed a reasonable estimate of damages and Seller may, at Seller's
287.  option, accept the Earnest Money as Seller's sole right to damages. An unfulfilled contingency is not a breach of Contract.

7c.  288.  Alternative Dispute Resolution ("ADR"): Buyer and Seller agree to mediate any dispute or claim arising out of or relating to this
289.  Contract in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All mediation costs shall be paid
290.  equally by the parties. In the event that mediation does not resolve all disputes or claims, the unresolved disputes or claims shall
291.  be submitted for binding arbitration. In such event, the parties shall agree upon an arbitrator and cooperate in the scheduling of an
292.  arbitration hearing. If the parties are unable to agree on an arbitrator, the dispute shall be submitted to the American Arbitration
293.  Association ("AAA") in accordance with the AAA Arbitration Rules for the Real Estate Industry. The decision of the arbitrator shall
294.  be final and nonappealable. Judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdic-
295.  tion. Notwithstanding the foregoing, either party may opt out of binding arbitration within thirty (30) days after the conclusion of the
296.  mediation conference by notice to the other and in such event either party shall have the right to resort to court action.

7d.  297.  Exclusions from ADR: The following matters are excluded from the requirement for ADR hereunder: (i) any action brought in the Small
298.  Claims Division of an Arizona Justice Court (up to $2,500) so long as the matter is not thereafter transferred or removed from the small
299.  claims division; (ii) judicial or nonjudicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or agreement
300.  for sale; (iii) an unlawful entry or detainer action; (iv) the filing or enforcement of a mechanic's lien; or (v) any matter that is within the
301.  jurisdiction of a probate court. Further, the filing of a judicial action to enable the recording of a notice of pending action ("lis pendens"),
302.  or order of attachment, receivership, injunction, or other provisional remedies shall not constitute a waiver of the
303.  obligation to submit the claim to ADR, nor shall such action constitute a breach of the duty to mediate or arbitrate.

7e.  304.  Attorneys Fees and Costs: The prevailing party in any dispute or claim between Buyer and Seller arising out of or relating
305.  to this Contract shall be awarded their reasonable attorney fees and costs. Costs shall include, without limitation, attorney
306.  fees, expert witness fees, fees paid to investigators, and arbitration costs.

Initials: SELLER SELLER    ©ARIZONA ASSOCIATION OF REALTORS®    Initials: BUYER BUYER
Form VLPC 8/07

# 8. ADDITIONAL TERMS AND CONDITIONS

8a. 307. The sale property is Saguaro Ranch Phase I Lot 50 (parcel # 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) less
308. approximately nine+ (9+) acres of Lot 50 where McClintock's Restaurant, the restaurant
309. parking lot, and the foundation for the Spa and Fitness Center is currently located,
310. and where other planned amenities, including swimming pools, tennis courts and the
311. art barn are to be located. An ALTA Certified Survey of the approximately forty and
312. one half + or - (40.5+ or -) acres being transferred with complete legal description
313. will be provided prior to closing.

315. Close of escrow shall occur as soon as possible after confirmation of debtor's plan
316. of re-organization.

318. Buyer agrees to make lot line adjustments after closing, in order to allow the seller
319. the ability to develop the planned amenities as long as these adjustments do not
320. effect the buyers ability to develop the casitas or any other allowed use.

322. If buyer wishes to develop something other than the planned casitas on the purchased
323. property, buyer agrees to wait for three (3) years from the close of escrow before
324. proceeding.

326. Seller will deliver to buyer at buyers request, all plans, drawings, environmental
327. documents, engineering and archaeology studies, etc. for this property, in his
328. possession.

329.
330.
331.
332.
333.
334.
335.
336.

8b. 337. Risk of Loss: If there is any loss or damage to the Property between the date of Contract acceptance and COE or possession,
338. whichever is earlier, by reason of fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be on the Seller,
339. provided, however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the purchase price,
340. either Seller or Buyer may elect to cancel the Contract.

8c. 341. Permission: Buyer and Seller grant Broker(s) permission to advise the public of this Contract.

8d. 342. Arizona Law: This Contract shall be governed by Arizona law and jurisdiction is exclusively conferred on the State of Arizona.

8e. 343. Time is of the Essence: The parties acknowledge that time is of the essence in the performance of the obligations
344. described herein.

8f. 345. **Compensation:** Seller and Buyer acknowledge that Broker(s) shall be compensated for services rendered as previously agreed by
346. separate written agreement(s), which shall be delivered by Broker(s) to Escrow Company for payment at COE, if not previously paid.
347. If Seller is obligated to pay Broker(s), this Contract shall constitute an irrevocable assignment of Seller's proceeds at COE. If Buyer
348. is obligated to pay Broker(s), payment shall be collected from Buyer as a condition of COE. COMMISSIONS PAYABLE FOR THE
349. SALE, LEASING, OR MANAGEMENT OF PROPERTY ARE NOT SET BY ANY BOARD OR ASSOCIATION OF REALTORS®, OR
350. MULTIPLE LISTING SERVICE, OR IN ANY MANNER OTHER THAN BETWEEN THE BROKER AND CLIENT.

8g. 351. **Copies and Counterparts:** A fully executed facsimile or electronic copy of the Contract shall be treated as an original
352. Contract. This Contract and any other documents required by this Contract may be executed by facsimile or other
353. electronic means and in any number of counterparts, which shall become effective upon delivery as provided for herein.
354. All counterparts shall be deemed to constitute one instrument, and each counterpart shall be deemed an original.

8h. 355. **Days:** All references to days in this Contract shall be construed as calendar days and a day shall begin at 12:00 a.m. and
356. end at 11:59 p.m.

8i. 357. **Calculating Time Periods:** In computing any time period prescribed or allowed by this Contract, the day of the act or event
358. from which the time period begins to run is not included and the last day of the time period is included. Contract acceptance
359. occurs on the date that the signed Contract (and any incorporated counter offer) is delivered to and received by the appropriate
360. Broker. Acts that must be performed three days prior to the COE Date must be performed three full days prior (i.e., if COE
361. Date is Friday the act must be performed by 11:59 p.m. on Monday).

8j. 362. **Entire Agreement:** This Contract, and any addenda and attachments, shall constitute the entire agreement between Seller and
363. Buyer, shall supersede any other written or oral agreements between Seller and Buyer and can be modified only by a writing
364. signed by Seller and Buyer. The failure to initial any page of this Contract shall not affect the validity or terms of this Contract.

8k. 365. **Subsequent Offers:** Buyer acknowledges that Seller has the right to accept subsequent offers until COE. Seller understands that
366. any subsequent offer accepted by the Seller must be a backup offer contingent on the cancellation of this Contract.

8l. 367. **Cancellation:** A party who wishes to exercise the right of cancellation as allowed herein may cancel this Contract by
368. delivering notice stating the reason for cancellation to the other party or to the Escrow Company. Cancellation shall become
369. effective immediately upon delivery of the cancellation notice.

8m. 370. **Notice:** Unless otherwise provided, delivery of all notices and documentation required or permitted hereunder shall be in writing
371. and deemed delivered and received when; (i) hand-delivered; (ii) sent via facsimile transmission; (iii) sent via electronic mail,
372. if email addresses are provided herein; or (iv) sent by recognized overnight courier service, and addressed to Buyer as
373. indicated in Section 8q, to Seller as indicated in Section 9a and to the Escrow Company indicated in Section 3a.

8n. 374. **Earnest Money:** Earnest Money is in the form of: ☐ Personal Check ☒ Other <u>wire to Title company</u>
375. If applicable, Earnest Money has been received by Broker named in Section 8q and upon acceptance of this offer will be
376. deposited with: ☐ Escrow Company ☐ Broker's Trust Account

8o. 377. **RELEASE OF BROKER(S):** SELLER AND BUYER HEREBY EXPRESSLY RELEASE, HOLD HARMLESS AND INDEMNIFY
378. BROKER(S) IN THIS TRANSACTION FROM ANY AND ALL LIABILITY AND RESPONSIBILITY REGARDING FINANCING, THE
379. CONDITION, SQUARE FOOTAGE/ACREAGE, LOT LINES, BOUNDARIES, VALUE, RENT ROLLS, ENVIRONMENTAL
380. PROBLEMS, SANITATION SYSTEMS, ABILITY TO DIVIDE OR SPLIT THE PROPERTY, BUILDING CODES, GOVERNMENTAL
381. REGULATIONS, INSURANCE OR ANY OTHER MATTER RELATING TO THE VALUE OR CONDITION OF THE PROPERTY.
382. (BUYER'S INITIALS REQUIRED) <u>    </u> BUYER    BUYER

8p. 383. **Terms of Acceptance:** This offer will become a binding Contract when acceptance is signed by Seller and
384. a signed copy delivered in person, by mail, facsimile or electronically, and received by Broker named in Section 8q
385. by <u>    February 10    </u>, 2011 at <u>    5    </u> ☐ a.m. / ☒ p.m., Mountain Standard Time.
386. Buyer may withdraw this offer at any time prior to receipt of Seller's signed acceptance. If no signed acceptance is received
387. by this date and time, this offer shall be deemed withdrawn and the Buyer's Earnest Money shall be returned.

388. THIS CONTRACT CONTAINS TEN PAGES EXCLUSIVE OF ANY ADDENDA AND ATTACHMENTS. PLEASE ENSURE THAT
389. YOU HAVE RECEIVED AND READ ALL TEN PAGES OF THIS OFFER AS WELL AS ANY ADDENDA AND ATTACHMENTS.

8q. 390. Broker on behalf of Buyer:

391. _____ None _____
PRINT SALESPERSON'S NAME        AGENT CODE        PRINT FIRM NAME        FIRM CODE

392. _____
FIRM ADDRESS        STATE        ZIP CODE

393. _____
TELEPHONE        FAX        EMAIL

8r. 394. Agency Confirmation: The Broker named in Section 8q above is the agent of (check one):
395. ☐ the Buyer  ☐ the Seller or  ☐ both the Buyer and Seller

8s. 396. The undersigned agree to purchase the Property on the terms and conditions herein stated and acknowledge receipt of a
397. copy hereof including the Buyer Attachment.

398. _____        _____
BUYER'S SIGNATURE                MO/DA/YR        BUYER'S SIGNATURE                MO/DA/YR
Stonehill Enterprises USA, Inc

399. _____        _____
ADDRESS                        ADDRESS

400. _____        _____
CITY, STATE, ZIP CODE                CITY, STATE, ZIP CODE

# 9. SELLER ACCEPTANCE

9a. 401. Broker on behalf of Seller:

402. _____ Michael Conlin _____   _____ 12861 _____   Saguaro Ranch Real Estate Corp.   _____ 3168 _____
PRINT SALESPERSON'S NAME        AGENT CODE        PRINT FIRM NAME        FIRM CODE

403. _____ 3800 W. Moore Road _____        Marana        AZ        85742
FIRM ADDRESS                STATE        ZIP CODE

404. (520) 498 2300   (520) 4982311        mconlin@saguaroranch.net
TELEPHONE        FAX        EMAIL

9b. 405. Agency Confirmation: The Broker named in Section 9a above is the agent of (check one):
406. ☒ the Seller or  ☐ both the Buyer and Seller

9c. 407. The undersigned agree to sell the Premises on the terms and conditions herein stated, acknowledge receipt of a
408. copy hereof and grant permission to Broker named in Section 9a to deliver a copy to Buyer.

409. ☐ Counter Offer is attached, and is incorporated herein by reference. Seller should sign both this offer and the Counter Offer.
410. If there is a conflict between this offer and the Counter Offer, the provisions of the Counter Offer shall be controlling.

411. _____  2/10/11        _____
SELLER'S SIGNATURE                MO/DA/YR        SELLER'S SIGNATURE                MO/DA/YR

412. Saguaro Ranch Development Corp.        _____
SELLER'S NAME PRINTED                SELLER'S NAME PRINTED

413. _____        _____
ADDRESS                        ADDRESS

414. _____        _____
CITY, STATE, ZIP CODE                CITY, STATE, ZIP CODE

415. ☐ OFFER REJECTED BY SELLER: _____
MONTH        DAY        YEAR        (SELLER'S INITIALS)

For Broker Use Only:
Brokerage File/Log No. _____  Manager's Initials _____  Broker's Initials _____  Date _____
MO/DA/YR

This form is available for use by the entire real estate industry. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark that may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics.
©Arizona Association of REALTORS® 2007 • This form is available through your local association of REALTORS® • Form VLPC B/07



3. Kathleen M. Ilyin
Purchase of Lot 75

*Kathleen M. Ilyin*

Mr. Stephen D. Phinny
Saguaro Ranch Development Company
P.O. Box 70207
Tucson, Arizona 85737

Regarding Purchase of Lot 75

Dear Stephen,

This letter will confirm that I am waiting for the debtor's plan of re organization to be confirmed so that I can close on lot 75 and become the owner of the same.

I have sufficient funds available to close this transaction. Attached is a letter addressing my having sufficient funds.

If you have any questions please feel free to contact me.

Sincerely,

# Title Security Agency of Arizona

## Escrow Ledger Report

| | | |
|---|---|---|
| Escrow Number : | 295 | Opening Date : 04/16/2010 |
| Escrow Officer : | Judy Susalla | Order Closing Date : |
| Buyer/Seller : | Kathleen Ilyin, as trustee of the Kathleen M. Ilyin Revocable Living Trust / Title Security Agency of Arizona, as trustee under Trust 773 | Trust Account Bank: National Bank of Arizona |

| Payer/Payee | Ref No. | Date | Status | Instrument Type | Amount($) |
|---|---|---|---|---|---|
| **POSTED** | | | | | |
| **DEPOSITS** | | | | | |
| Kathleen Ilyin, as trustee of the Kathleen M. Ilyin Revocable Living Trust | 000012454 | 04/19/2010 | Deposited (c) | CHECK | 30,000.00 |

| | |
|---|---|
| Total Receipts | 30,000.00 |
| Total Fees | |
| Total Disbursements | |
| Balance | 30,000.00 |

| | |
|---|---|
| Grand Total for Receipts | 30,000.00 |
| Grand Total for Fees | |
| Grand Total for Disbursements | |
| Net Balance | 30,000.00 |



TCI WEALTH
ADVISORS, INC.

April 11, 2011

To Whom It May Concern

At the request of our mutual client, Kathleen Ilyin, I am writing this letter as a confirmation of assets for purchase of land/lot. Kathy has more than enough assets to cover.

Sincerely,

Robert C. Swift
TCI Wealth Advisors, Inc.

[1]Please remember that different types of investments involve varying degrees of risk, and that past performance may not be indicative of future results. Therefore, it should not be assumed that future performance of any specific investment or investment strategy (including the investments and/or investment strategies recommended or undertaken by TCI Wealth Advisors, Inc.) will be profitable.

4011 EAST SUNRISE DRIVE TUCSON, ARIZONA 85718   Telephone: 520-733-1477 Facsimile: 520-733-1488  Toll Free: 877-733.1859

TUCSON   SCOTTSDALE   FLAGSTAFF   RENO/TAHOE   SANTA FE   DENVER

WWW.TCIWEALTH.COM

4. Realty Ideas Corporation
Purchase of Lot 82

.

**Stephen Phinny**

Mr Phinny,

Thank you for keeping me up to date on the Plan approval. Once it is approved, it is still my intention to move forward under the terms and conditions of our purchase contract.

Best of luck to you.

Ted Anderson
Sent from cellular device

# Fax Cover Sheet

## *charles* SCHWAB

| | |
|---|---|
| Date: 4/8/11    1:00PM | Pages (including cover sheet): 2 |

To: Ted Anderson          Fax: 520-323-8248

From: Jaime Hale          Phoenix SOS Team

Comments: Verification of Deposit Letter

---

**Charles Schwab & Co. Inc.,**          Fax: 602-355-5412
**Service Operations Support**          Phone: 800-378-0685 ext 34300

---

The information contained in this facsimile message is confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is wrongful and may subject you to civil liability. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the address listed above via the U.S. Postal Service.

This material is for information purposes only and is not meant as an individual recommendation or personal solicitation to buy, sell or hold any particular security. This material contains information from sources believed to be reliable; however, Schwab makes no claims regarding its accuracy, completeness or reliability. We recommend that investors define their goals risk tolerance, time horizon, and investment objectives in addition to researching possible investment choices. Any opinions expressed in this material are subject to change without notice. Charles Schwab & Co., Inc., its affiliated companies, its employees or its shareholders may act as principal in a transaction, make a market for, or have a position in the securities discussed herein. In addition, an officer or director of Charles Schwab & Co., Inc., may be a director of a corporation mentioned in this material.

### ACCOUNT APPLICATIONS

If we have faxed you an application for a new account, we cannot accept an application on fax paper. Please be sure that your application is sent to us on plain paper in order to process your application as quickly as possible. You can return the application by mail to Charles Schwab & Co., Inc. at the address below:

| | |
|---|---|
| P. O. Box 52114 | P.O. Box 628291 |
| Phoenix, AZ  85072 | Orlando, FL  32862 |
| 800-472-9813 | 800-472-9813 |
| Fax 888-526-7252 or 602-355-5478 | Fax 800-955-7561 |

Charles Schwab & Co., Inc. Member SIPC

# Title Security Agency of Arizona

### Escrow Ledger Report

| | | |
|---|---|---|
| Escrow Number : | ,489 | |
| Escrow Officer : | Judy Susalla | |
| Buyer/Seller : | Realty Ideas Corporation/ Title Security Agency of Arizona Trust No. 773 | |

| | |
|---|---|
| Opening Date : | 04/26/2010 |
| Order Closing Date : | |
| Trust Account Bank: | National Bank of Arizona |

| Payer/Payee | Ref No. | Date | Status | Instrument Type | Amount($) |
|---|---|---|---|---|---|
| **POSTED** | | | | | |
| **DEPOSITS** | | | | | |
| Realty Ideas Corporation | 307 | 04/27/2010 | Deposited (c) | CHECK | 20,000.00 |
| | | | | Total Receipts | 20,000.00 |
| | | | | Total Fees | |
| | | | | Total Disbursements | |
| | | | | Balance | 20,000.00 |

| | |
|---|---|
| Grand Total for Receipts | 20,000.00 |
| Grand Total for Fees | |
| Grand Total for Disbursements | |
| Net Balance | 20,000.00 |

*charles* SCHWAB

2423 E Lincoln Drive, Phoenix, AZ 85016-1215

April 8, 2011

Ted William Anderson
PO Box 65358
Tuscon, AZ  85728

Re:  Schwab Account ####-6100

Dear Mr. Anderson:

This letter is to confirm that as of the close of business on April 7, 2011, the above
referenced account had a liquid net worth in excess of $550,000.00.

If you have further questions, please feel free to contact me at 800-378-0685 ext 34300.

Sincerely,

Jaime Hale
Resolution Manager
Charles Schwab & Co. Inc.

The information contained herein is obtained from sources believed to be reliable, but its
accuracy or completeness is not guaranteed. This report is for informational purposes
only and is not an official record.  All expressions of opinion directly or indirectly are
subject to change without notice. For tax purposes, please refer to your account
statements and confirmations as this information is not intended to be a substitute for
specific individualized tax, legal or investment planning advice. Where specific advice is
necessary or appropriate, Schwab recommends consultation with a qualified tax advisor,
CPA, Financial Planner or Investment Manager.

Charles Schwab & Co., Inc. Member SIPC.

5. Dr. Russ J. Andaloro
   Purchase of Lot 73

April 13, 2011

Mr. Stephen D. Phinny
Saguaro Ranch Development Company
P.O. Box 70207
Tucson, Arizona 85737

Regarding Purchase of Lot 73

Dear Stephen,

This letter will confirm that I am waiting for the debtor's plan of re-organization to be confirmed. Therefore I will be able to close on lot 73 and become the owner of the same.

I have sufficient funds available to close this transaction.

If you have any questions please feel free to contact me.

Sincerely,

# Title Security Agency of Arizona

## Escrow Ledger Report

| | | |
|---|---|---|
| Escrow Number : | 305 | |
| Escrow Officer : | Judy Susalla | |
| Buyer/Seller : | Andaloro/Title Security Agency of Arizona, an Arizona corporation, as Trustee under Trust 773 | |

| | |
|---|---|
| Opening Date : | 02/09/2011 |
| Order Closing Date : | |
| Trust Account Bank: | National Bank of Arizona |

| Payer/Payee | Ref No. | Date | Status | Instrument Type | Amount($) |
|---|---|---|---|---|---|
| **POSTED** | | | | | |
| **DEPOSITS** | | | | | |
| Russ J. Andaloro | 166 | 02/11/2011 | Deposited  (c) | CHECK | 40,000.00 |
| | | | | Total Receipts | 40,000.00 |
| | | | | Total Fees | |
| | | | | Total Disbursements | |
| | | | | Balance | 40,000.00 |
| | | | | Grand Total for Receipts | 40,000.00 |
| | | | | Grand Total for Fees | |
| | | | | Grand Total for Disbursements | |
| | | | | Net Balance | 40,000.00 |

6. John M. Graham
Purchase of Lot 86



# Graham
# Lundberg
# Peschel &



*Attorneys at Law*

*Founded in 1979* ———— *Practice Limited to Personal Injury* ————

500 John Street ❖ Seattle, WA 98109 ❖ (206) 448-1992 ❖ (800) 422-4610 ❖ FAX (206) 448-4640

April 13, 2011

Stephen D. Phinny
Saguaro Ranch Development Company
P.O. Box 70207
Tucson, AZ 85737

Re: Purchase of Lot 86 at Saguaro Ranch

Dear Mr. Phinny:

This letter will confirm that I am waiting for the debtor's plan of re-organization to be confirmed so that I can close and become the owner of the same.

I have sufficient funds available to close this transaction. Under separate cover I will forward a letter from my banker/broker verifying that I have more than enough liquid assets to pay all cash at closing.

Should you have additional questions please feel free to contact me.

Respectfully,

JOHN M. GRAHAM
Attorney at Law

# Title Security Agency of Arizona

## Escrow Ledger Report

| | | |
|---|---|---|
| Escrow Number : | 1984 | Opening Date : 03/15/2011 |
| Escrow Officer : | Judy Susalla | Order Closing Date : |
| Buyer/Seller : | Graham/Title Security Agency of Arizona, an Arizona corporation as trustee under Trust 773 | Trust Account Bank: National Bank of Arizona |

| Payer/Payee | Ref No. | Date | Status | Instrument Type | Amount($) |
|---|---|---|---|---|---|
| POSTED | | | | | |
| DEPOSITS | | | | | |
| John M. Graham | 6025 | 03/15/2011 | Deposited (c) | WIRE | 10,000.00 |
| | | | | Total Receipts | 10,000.00 |
| | | | | Total Fees | |
| | | | | Total Disbursements | |
| | | | | Balance | 10,000.00 |

| | |
|---|---|
| Grand Total for Receipts | 10,000.00 |
| Grand Total for Fees | |
| Grand Total for Disbursements | |
| Net Balance | 10,000.00 |

7. Paul L. Dennis
Purchase of Lot 87



Home Office:
One Nationwide Plaza
Columbus, OH 43215-2220

April 14, 2011

Saguaro Ranch Development Company
Mr. Stephen Phinny
PO Box 70207
Tucson, AZ 85737

Dear Mr. Phinny,

This letter is confirming that it is my intention to close on Lot 87 located in the Saguaro Ranch Development as soon as the debtor's plan of re-organization is confirmed.

I have the financial capability to complete this purchase and look forward to doing so soon. Evidence of these finances can be forwarded to you through my attorney and/or CPA.

Please contact me at any time to further discuss this matter.

Sincerely,

Paul L Dennis
President
Paul L Dennis Insurance Agency Inc
Nationwide Insurance
13655 23 Mile Rd
Shelby Twp, MI 48315
586 566 2600

# Title Security Agency of Arizona

### Escrow Ledger Report

| | | |
|---|---|---|
| Escrow Number : | 780 | Opening Date :   03/07/2011 |
| Escrow Officer : | Judy Susalla | Order Closing Date : |
| Buyer/Seller : | Dennis/TSA Trust | Trust Account Bank:   National Bank of Arizona |

| Payer/Payee | Ref No. | Date | Status | Instrument Type | Amount($) |
|---|---|---|---|---|---|
| **POSTED** | | | | | |
| **DEPOSITS** | | | | | |
| Paul Leo Dennis | 1460 | 03/07/2011 | Deposited (c) | CHECK | 10,000.00 |
| **DISBURSEMENTS** | | | | | |
| Paul Dennis | | 03/30/2011 | Sent (c) | SAVINGTRANSFER | 10,000.00 |
| | | | | Total Receipts | 10,000.00 |
| | | | | Total Fees | |
| | | | | Total Disbursements | 10,000.00 |
| | | | | Balance | 0.00 |
| | | | | Grand Total for Receipts | 10,000.00 |
| | | | | Grand Total for Fees | |
| | | | | Grand Total for Disbursements | 10,000.00 |
| | | | | Net Balance | 0.00 |

8. Scott Lundberg
Purchase of Lot 53



**GRAHAM LUNDBERG PESCHEL** &

P.S. Inc.

*Personal Injury Attorneys*

Founded 1979

500 John Street, Seattle, WA 98109
P: 206.448.1992    F: 206.448.4640

SHAREHOLDERS
JOHN GRAHAM
SCOTT F. LUNDBERG
BRIAN J. PESCHEL
CYDNEY CAMPBELL WEBSTER
JOHN D. WEBBER
JAMES GOODING*
*Also admitted in NY, NJ, CA

ASSOCIATE ATTORNEYS
NIKHIL BAVARIYA
JANELLE M. CARNEY*
J. ALEX FRENCH
CHERYL A. GAWRON
BRYAN A. OLSEN
CARRIE D. UMLAND
HEATHER D. WEBB
*Also admitted in AZ

April 15, 2011

Mr. Stephen D. Phinny
Saguaro Ranch Development Company
P.O. Box 70207
Tucson, Arizona 85737

RE:    Purchase of Lot 53

Dear Stephen,

This letter will confirm that I am waiting for the debtor's plan of re organization to be confirmed so that I can close on lot 53 and become the owner of the same.

I have sufficient funds available to close this transaction. *THIS LETTER IS WRITTEN TO COMPLY WITH THE BANKRUPTCY COURT'S RECENT COURT ORDER. THIS LETTER HEREBY DOES NOT SUPERSEDE THE TERMS AND CONDITIONS OF ORIGINAL* If you have any questions please feel free to contact me. *PURCHASE & SALE AGREEMENT.*

Sincerely,

Scott F. Lundberg
slundberg@glpattorneys.com

H:\GPL doc\4 13 11 Phinny cor - saguaro ranch.doc

# Title Security Agency of Arizona

## Escrow Ledger Report

| | | | | |
|---|---|---|---|---|
| Escrow Number : | 490 | | Opening Date : | 04/26/2010 |
| Escrow Officer : | Judy Susalla | | Order Closing Date : | |
| Buyer/Seller : | Lundberg/Title Security Agency of Arizona Trust 773 | | Trust Account Bank: | National Bank of Arizona |

| Payer/Payee | Ref.No. | Date | Status | Instrument Type | Amount($) |
|---|---|---|---|---|---|
| **POSTED** | | | | | |
| **DEPOSITS** | | | | | |
| Scott Lundberg | 7322 | 05/12/2010 | Deposited (c) | CHECK | 10,000.00 |
| | | | | Total Receipts | 10,000.00 |
| | | | | Total Fees | |
| | | | | Total Disbursements | |
| | | | | Balance | 10,000.00 |
| | | | | Grand Total for Receipts | 10,000.00 |
| | | | | Grand Total for Fees | |
| | | | | Grand Total for Disbursements | |
| | | | | Net Balance | 10,000.00 |

EXHIBIT C


THE PLANNING CENTER
a division of TPC Group, Inc.

Kevin Kish, Planning Director
Town of Marana
11555 W.Civic Center Drive
Marana, AZ 85653

March 10, 2011

RE: Confirmation of applicability of "Minor Land Division" for Saguaro Ranch II Lot 50

Kevin,

As part of a reconsideration of the Chapter 11 bankruptcy for Saguaro Ranch, a Purchase Contract was presented to the Court for approximately 39 acres of Lot 50, further described as tax parcel 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 consisting of approximately 50 acres. When this contract was presented to the Court, counsel for the lender, objected stating that this sale could not take place, since this would require a "replatting" of the property, since the sale was for a "portion" of Lot 50.

I am requesting confirmation from you, in writing, that this property could be "split" using the Town of Marana's Administrative "Minor Land Division" based on the Town's procedural Guide where it states: *"Minor Land Division" defined as follows: "The division of improved or unimproved land for the purpose of financing, sale or lease, whether immediate or future, into two (2) parts, and when the boundaries of such property have been fixed by a recorded plat."*

This property is in total compliance with the above referenced "definition" and since this sale is an important component in getting confirmation of the bankruptcy plan, with the majority of the proceeds going to the lender, time is of the essence in demonstrating to the Court that this "administrative procedure" is not only the most time effective, (4 to 6 weeks) but also once the application has been approved by you, in your capacity as Planning Director, any discrepancies in legal descriptions or surveys is 100% curable.

I have met with Rick Engineering, who have all of the survey and mapping on this parcel, and with confirmation from you that this property is compliant with the "Minor Land Division" process, we anticipate having legals and maps for your consideration by next week, so we can be scheduled for the required pre-application meeting.

a   110 s church ste 6320 tucson az 85701
o   520.623.6146
f   520.622.1950
w   azplanningcenter.com

Eric Slocum Sparks, the attorney for the Saguaro Ranch Chapter 11 bankruptcy, needs to file a brief with the Court tomorrow, so he would like to attach "confirmation" from you on the use of the "Minor Land Division" for this property.

For your convenience, and the interest of time, I have added a signature block and confirmation line below.

Thank you for your consideration in this matter and your prompt response is greatly appreciated.

Sincerely,

Jack Neubeck
Principal

Aknowledged that Saguaro Ranch II Lot 50 meets the criteria, as outlined in the Town of Marana's procedural guide for "Minor Land Division" this 11th day of March, 2011

Kevin Kish                          3-11-11
Kevin Kish                          Date
Planning Director
Town of Marana



THE PLANNING CENTER
a division of TPC Group, Inc.



**SUBMITTAL CHECKLIST**

## TOWN OF MARANA PLANNING DEPARTMENT
11555 W. CIVIC CENTER DRIVE, BLDG. A2 -MARANA, AZ 85653-7003 PHONE (520)382-2600 - FAX (520)382-2639

PROJECT NAME/DESCRIPTION: _LOT 50 SAGUARO RANCH 11 LOT SPLIT_

APPLICANT(S): _SEE MTG. ATTENDANCE_

TYPE OF PROJECT:  ☒ RESIDENTIAL  ☐ COMMERCIAL  ☐ INDUSTRIAL  ☐ MIXED-USE

THIS FORM WILL BE COMPLETED BY THE PROJECT PLANNER DURING THE PRE-SUBMITTAL MEETING, AND A COPY WILL BE PROVIDED TO THE APPLICANT. THE DEVELOPMENT COORDINATOR WILL REJECT THE SUBMITTAL IF ANY OF THE FOLLOWING CHECKED ITEMS ARE MISSING. PLEASE CONTACT THE PLANNING DEPARTMENT AT (520)382-2600 IF YOU HAVE ANY QUESTIONS.

## SUBMITTAL TO INCLUDE:

☒ 1.) An electronic copy of *all* documents (on a **CD** in PDF format) should be included with each submittal

☒ 2.) One (1) completed, signed Town of Marana Planning and Engineering application for each plan review type (for example: development plan, plat, civil engineering plan, etc.)

☒ 3.) One (1) statement of authorization from property owner (if someone other than the owner signs the application).

☒ 4.) One (1) copy of current grant deed (if applicable)

☒ 5.) Review fees: [1]
- Town of Marana fees per current fee schedule with check made payable to *Town of Marana*
- Pima County Wastewater review fees with separate check made payable to *Pima County Treasurer*
- Northwest Fire review fees with separate check made payable to *Northwest Fire District*

☐ 6.) Site Analysis / Specific Plan - Twenty-one (21) hard copies and ten (10) CD copies in PDF format

☐ 7.) Development Plan or Plat (circle one)
Twelve (12) copies of plan—24" X 36" folded to 8 ½" X 11" (approved "Marana Fold") *and* twenty-eight (28) copies of plan—11" X 17" reduction folded to 8 ½" X 11" [2]

☐ 8.) One (1) CD of current Title Report dated within 60 days of submission, also include Schedule "A" and Schedule "B" documents (see title submission requirements checklist)
- One (1) copy of list of beneficiaries to trust
- One (1) copy of list of corporate officers

☐ 9.) Two (2) copies of the Hydrology (Drainage) Report

☐ 10.) Two (2) copies of the Archaeological Evaluation

☐ 11.) Two (2) copies of the Phase I Environmental Report



**TOWN OF MARANA**

# MEETING ATTENDANCE

Pre Application Meeting LOT 50 SAGUARO RANCH II LOT SPLIT

Date 24, MAR. '11

| Name | Company | Phone/Email |
|------|---------|-------------|
| Carl Larson | TOM Dev. Engr. | 382-2668 / clarson@marana.com |
| Fernando Prol | " Traffic Eng. | 382-2676 fprol@marana.com |
| PAUL R. FROEHLICH | TOM BLDG SAFETY | 382-2600 P.froehlke@marana.co |
| Paula Bluemer | Town of Marana Environmental | 382-2600 pbluemer@marana.c |
| JACK NEUBECK | THE PLANNING CENTER | jneubeck@azplanningcen |
| Jim Pratt | NORTHWEST FIRE DISTRICT | JPRATT@NORTHWESTFIRE.ORG |
| CHUCK MARTIN | RICK ENGINEERING | cmartin@rickengineering.co |
| Scott Leska | Marana - CIP Engineering | Sleska@marana.co |
| Lisa Shafer | Town of Marana | 382-2649 lshafer@marana.com |
| STEVEN VASQUEZ | T.O.M. | 382-2623 svasquez@marana.com |

