Fennemore Craig, P.C.
George O. Krauja (No. 10964)
One South Church Avenue
Suite 1000
Tucson, AZ 85701-1627
Telephone: (520) 879-6800
Email: gkrauja@fclaw.com

Fennemore Craig, P.C.
Laurel E. Davis (Nevada Bar No. 3005)
300 South Fourth Street, Suite 1400
Las Vegas, NV 89101
Telephone: (702) 692-8000
Email: ldavis@fclaw.com

Attorneys for Kennedy Funding, Inc.
and Anglo-American Financial, LLC

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SAGUARO RANCH DEVELOPMENT CORPORATION,<br><br>Debtor. | Case No. 4:09-bk-02490-EWH<br>**(Jointly Administered)**<br>Chapter 11<br><br>**KENNEDY FUNDING'S RESPONSE TO DEBTORS' MEMORANDUM RE: RELEASE PRICE PROVIDED IN THIRD AMENDED AND MODIFIED PLAN [DN 665]** |
| In re:<br><br>PCC INVESTMENTS, LLC,<br><br>Debtor. | Case No. 4:09-bk-02484-EWH<br>Chapter 11 |
| In re:<br><br>SAGUARO GUEST RANCH MANAGEMENT CORPORATION,<br><br>Debtor. | Case No. 4:09-bk-02489-EWH<br>Chapter 11 |
| In re:<br><br>SAGUARO RANCH INVESTMENTS, LLC,<br><br>Debtor. | Case No. 4:09-bk-02492-JMM<br>Chapter 11 |

FENNEMORE CRAIG, P.C.
TUCSON

5255594.5

In re:

SAGUARO RANCH REAL ESTATE CORPORATION,

Debtor.

Case No. 4:09-bk-02494-EWH
Chapter 11

Debtors apparently believe they are not constrained by what actually occurred at prior hearings, but instead can argue that when the Court did not need to reach certain questions in order to reject the Second Amended Plan, that now means the Court agreed with Debtors' strained legal positions. Debtors' *Memorandum Re: Release Price Provided in Third Amended and Modified Plan Dated March 26, 2011* [DN 655] (the "Memorandum") filed May 12, 2011, compels Kennedy Funding, Inc., and Anglo-American Financial, LLC (collectively "Kennedy Funding") to respond.

I. **THE COURT NEVER REACHED THE 1111(b) ELECTION ISSUES BECAUSE OF OTHER DEFECTS IN THE SECOND AMENDED PLAN.**

Debtors badly mischaracterize the Court's actual holdings and actual statements arising out of the January 31, and February 4, 2011 combined hearing on Confirmation of the Second Amended Plan and the Motion to Lift Stay. Incredibly, Debtors contend at the March 4, 2011 hearing on Debtors' Rule 59 and Rule 60 motions, "the Court conceded that the Second Amended Plan satisfied Kennedy Funding's 1111(b) claim." (*Memorandum*, p. 3, lines 14-16.) The Court did no such thing. On March 4, 2011, the Court simply clarified the statement that the numbers in the Debtors' cash flow schedules showed sufficient total cash flow so that Debtors *could* pay Kennedy Funding's claim, not that the proposed amount to be paid by the Second Amended Plan satisfied the 1111(b) Election, nor that achieving the projections was even possible. The Court did not make *any* holding finding the 1111(b) Election was satisfied, or that the Second Amended Plan was feasible.

The Court stated on February 4: "I know you're all dying for me to tell you that interest rate. But I don't think I have to reach it. And if I don't have to reach it, I'm not going to reach it." [DN 503, February 4, 2011 Transcript at p. 207, lines 20-23.] Not

FENNEMORE CRAIG, P.C.
TUCSON

5255594.5

- 2 -

needing to reach interest rate, and not needing to reach the 1111(b) Election, is a far cry from supposedly "conceding" the Second Amended Plan satisfied the 1111(b) Election.

## II. SAGUARO RANCH'S ARGUMENTS REGARDING PROPOSED RELEASE PRICES ACTUALLY ADMIT THE THIRD AMENDED PLAN IS NOT CONFIRMABLE.

### A. Any Claim the Third Amended Plan Addresses the Court's Concerns Regarding the Partial Releases of Portions of Lot 50 Borders On Bad Faith.

Kennedy Funding addresses why Debtors' Lot 50 release scheme is not fair and equitable to Kennedy Funding, and does not give Kennedy Funding the indubitable equivalent of its claim, in its May 11, 2011 *Objection to Third Amended and Modified Plan of Reorganization*, at pp. 14-15, and p. 26 line 19- p. 27 line 16 [DN 657]. Debtors' Second Amended Plan proposed to pay Kennedy Funding a total of approximately $7,762,482 for releases of casita lot sites. The Court rejected the Second Amended Plan as not fair and equitable to Kennedy Funding. Debtor's now propose to pay Kennedy Funding *$4.7 million less*, and incredibly assert the Third Amended Plan overcomes the deficiencies of the Second Amended Plan.

Debtors fail to acknowledge what the Court actually stated in its February 4, 2011 ruling, which held release of the Casita Lot without giving Kennedy Funding additional collateral is not fair and equitable:

> **THE COURT:** But let me tell you where the other problems are in the Debtors' plan, just quite frankly, so we all know where I am. I have this problem with it - - and this is before I get to interest rate.
> . . .
> Now, it is true that the Debtor can, under the Code, modify the existing terms of any security agreement. But the analysis I have to engage in when I do that is that we don't shift too much risk or most of the risk to the creditor. So when I get to the casita lot, whether it's nine pieces of property or 62 or 40 - - however many casitas we're talking about, I'm confronted with asking - - *the Debtor is asking me to confirm a plan that modifies the secured creditor's rights and essentially deprives them of their collateral without producing any additional collateral to replace it*. In the other case you and I had together, I found that the debtor could meet that standard because they pledged collateral . . . *I don't see it in this plan, independent*

*of interest rate, independent of valuation.* It's a very hard issue. And I have found very few reported cases. And the Debtor has not presented me with any which would permit me on these facts to modify the terms of Kennedy's security in this way. And - - now, I give Mr. Greenberg a lot of credit as an appraiser that he was willing to actually say that he didn't think the Debtor's concept for the casita lot was realistic. But the Debtor hasn't proposed anything else. *And the Court would still, even under nine lots, have to find some way to pledge and/or provide Kennedy with something more. Because you're eroding their collateral base.*" [DN 503, 2/4/2011 Transcript, at p. 204 line 5 – p. 205 line 15]. (Emphasis added).

Debtor's Third Amended Plan still asks the Court to confirm a plan that erodes Kennedy Funding's collateral base, by releasing Kennedy Funding's Lot 50 collateral without payment in full to Kennedy Funding, and without producing "any additional collateral to replace it." Whether nine lots, 40 lots, 63 lots --- or one lot --- Debtors' fail to provide Kennedy Funding "with something more."

In summary, the defects with the Lot 50 transaction include:

- Kennedy Funding is not required to release the Lot 50 collateral until *it is paid in full*. This Resort Site parcel is an integral part of the overall project, and of the overall collateral securing Kennedy Funding, which is exactly why this collateral cannot be sold until the loan is paid in full. Mr. Phinny admitted the loan documents do not allow a release price for the casita site [DN 501, January 31, 2011, Transcript at p. 178, lines 10-13.]

- Debtors shifting numbers approach now attempts to justify the sale price of Lot 50 by asserting construction costs are $250,000 per luxury lot. *Memorandum*, p. 4, fn. 1. Now that it is convenient for them, Debtors state Lot 50's construction costs are $250,000 per luxury lot. But in their plan projections, including for difficult build locations throughout the project, Debtors use approximately $100,000 per lot, and appraiser Bruce Greenberg used $150,000 as the cost figures [DN 503, 2/4/2011 Transcript, Greenberg Testimony, p. 66 line 10 – p. 67 line 16.]. The Court should order Debtors to update their plan cash flow projection using $250,000 construction cost per lot for all lots, so we can all see those results.

- Debtors have provided no information regarding the alleged buyer's ability to actually close, much less its development experience and ability to actually build casita units. The Lot 50 sales contract has no commitment to build casita sites. The buyer also could immediately resell the property to a third party, who would have no obligation to build casita sites on the project, now or ever.

5255594.5

- In January 2011, Debtors claimed development of the casita project would generate some $21,000,000 in profits. Debtors now apparently are willing to shift potential profits to Stonehill Enterprises. Debtors have provided no information regarding their potential involvement in Stonehill.

- Debtors' supplemental disclosures failed to address the required questions of: establishing Buyer's relationship with Debtors or management of Debtors; the purported Buyer's development experience and development plans for the site; the purported Buyer's actual funding to close the purchase; and the Debtors' contingency plan if the Lot 50 sale does not close.

Debtor's Third Amended Plan provides worse treatment for Kennedy Funding than the Second Amended Plan did. The Third Amended Plan does not address the concerns properly expressed by the Court regarding the Lot 50 sale not being fair and equitable to Kennedy Funding, not providing Kennedy Funding the indubitable equivalent of its claim, and not providing Kennedy Funding additional new collateral. The Lot 50 scheme must be rejected.

**B.     Debtor's Argument for a Release Price of $213,975 for the Luxury Lots Was Already Rejected.**

Kennedy Funding's Objection Memorandum addresses the deficiencies in luxury lot release prices. [DN 657, *Objection* at p. 12, line 13 – p. 14, line 1, p. 25, line 9 – p. 24, line 18.] Debtors continue to drag out their already rejected argument "net" release prices supposedly were below the minimum release price of 70% of gross sales price or $900,000. Debtors presented that exact argument to the Court, and the Court expressly rejected it. The Court's February 4, 2011 Ruling correctly rejected Debtors' "net" release price theory:

> [THE COURT] And then we come to the issue of lot release prices. I think I get it. *I think I understand Mr. Phinny's position. I've read the loan documents. I understand that there is a process where notwithstanding what the loan documents said, there was a provision to relend when lots sold. There's a part of me that kind of wants to say, so what? You know, you're in breach of that agreement. You're not able to meet those standards for relending.* There were all kinds of conditions to it. The bank could in its sole and I think discretion decide not to advance you the funds.

FENNEMORE CRAIG, P.C.
TUCSON

5255594.5

...
> But the difference it seems to me is you've lowered the release price significantly from what the loan documents say.... But overall, there's simply not enough money in this plan to protect Kennedy from the sizeable risk that the lots aren't going to sell for [$500,000] a lot, that they're not going to be able to take down 12. . . . But, again, *I have to find that the plan is fair and equitable. And I can't find it's fair and equitable when the lot release prices are so low compared to what they were under the existing loan documents* and where Kennedy is going to be required to provide releases on a piece of collateral that it's not required to provide releases on under its existing loan documents. *And there's no compensation to Kennedy for that additional risk.*" [DN 503, 2/4/2011 Transcript, at p. 205 line 16 – p. 207 line 3.] (Emphasis added.)

Debtors need to have ridiculously low release prices to make their projections seem to "work." Debtors proposed fixed release price of $213,975 is only 43% of their assumed $500,000 sale price. The percentage will decline over time, if lot sales prices increase. Expert testimony from Frank Hundley will confirm that the existing 70% release price is at the *low* end of reasonable, as customary release prices would be 75% to 80% of gross sales price. [DN 651, Declaration of Frank T. Hundley, at ¶¶ 13 and 14.]

The Third Amended Plan still has release prices that attempt to shift all risk to Kennedy Funding, and as the Court previously stated, "there's no compensation to Kennedy for that additional risk", because Debtors give no new or additional collateral. The release prices are not fair and equitable, and do not give Kennedy Funding the indubitable equivalent of its claim.

C. **The Debtors' Plea the Court Should Set a Release Price for Them Concedes the Plan Should be Rejected.**

Debtors actually concede they know the Third Amended Plan does not provide fair and equitable treatment to Kennedy Funding, nor provide Kennedy Funding the indubitable equivalent of its claim, because they ask the Court to try to fix the problem by setting an alternative release price for them. First, it is the Debtors' obligation to propose a confirmable plan, and to provide "sufficient evidence to indicate a successful reorganization within a reasonable time is *assured*." *In Re Sun Valley Newspapers*, 171

B.R. 71, 74, (BAP 9th Cir. 1994) (emphasis added). They have not done so. Second, Debtors' proposal the Court suggest alternative release price arrangements provides Kennedy Funding and other interested parties no opportunity to evaluate the financial effects of such changes. Debtors projections are so tight even small changes in assumptions drastically alter the results. Changing numbers on the fly is unreasonable and unworkable.

It is not the Court's role to propose a confirmable plan for Debtors. The Third Amended Plan cannot be confirmed, for all the reasons expressed in Kennedy Funding's Objection Memorandum.

### III. DEBTORS CONTINUE TO IMPROPERLY ASSERT KENNEDY FUNDING'S CLAIM AMOUNT.

The Court's February 4, 2011 ruling correctly analyzes Kennedy Funding's claim includes interest:

> **THE COURT:** So the best case scenario I can see here for the Debtor is that from the petition date to the confirmation date at a minimum Kennedy gets the contract rate of interest. And it may very well get the default rate of interest, Mr. Sparks. I don't know. But I - - because we haven't briefed the issue. But let's assume, if you want me to deal with this today, the worst case scenario is they get a default rate of interest. And then Mr. Krauja, is your claim $39,000,000 and change?
> **MR. KRAUJA:** $39,966,000." (DN 503, 2/4/2011 Transcript, at p. 195, line 21 – p. 196, line 5).

Debtors continue to ignore that Kennedy Funding's loan is fully matured. The Court's February 4, 2011 Ruling recognizes Kennedy Funding's loan is fully matured:

> **THE COURT:** The loan is fully matured. Correct?
> **MR. KRAUJA:** It went into default May 1st 2008 and then fully matured December 31st 2008. Both pre-petition.
> **THE COURT:** Okay. So in my mind, *it's a fully matured loan.* And I'm not too concerned about 506. I mean, I did find that you were adequately protected. That's why we're here two years later as opposed to one year later. But the question becomes - - you can't alter the terms of the loan until you get confirmation. And this is not a loan where Answhite (phonetic) [*Entz-White*] is going to apply. ***There's no curing of the default here. So we have to live with the loan document as it was.*** And so I think it's

highly, Mr. Sparks and Ms. Darcy, that I believe that Kennedy Funding is correct in its calculation of the interest. And what it's entitled to. So that's $39,000,000." (DN 503, 2/4/2011 Transcript, at p. 201 line 18 – p. 202 line 7). (Emphasis added.)

## IV. CONCLUSION

Debtors Memorandum misstates the Court's prior rulings, and actually highlights why the Debtors' proposed release prices are neither fair and equitable to Kennedy Funding, nor meet the indubitable equivalent requirement. The Third Amended Plan is not confirmable.

DATED this 13th day of May, 2011.

                FENNEMORE CRAIG, P.C.

                By /s/ George O. Krauja  #010964
                    George O. Krauja

                By /s/ Laurel E. Davis, NV Bar #3005
                    Laurel E. Davis

                Attorneys for Kennedy Funding, Inc.
                and Anglo-American Financial, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, with service electronically upon:

Eric Slocum Sparks
LAW OFFICES OF ERIC SLOCUM SPARKS, P.C.
110 S. Church Avenue, #2270
Tucson, AZ 85701
eric@ericslocumsparkspc.com
Attorney for Debtors

Christopher J. Pattock
UNITED STATES TRUSTEE
230 N. First Avenue #204
Phoenix, AZ 85003
Christopher.J.Pattock@usdoj.gov

5255594.5

- 8 -

| | | |
|---|---|---|
| 1 | Michael W. Baldwin<br>LAW OFFICE OF MICHAEL BALDWIN PLC<br>PO Box 35487<br>Tucson, AZ 85740-5487<br>Michael.Baldwin@azbar.org<br>Attorney for Theresa Chamberlain, Steven Blomquist, Sharyl Cummings and Timothy Blowers | Kevin J. Blakley<br>GAMMAGE & BURNHAM, P.L.C.<br>Two N. Central Avenue, 18th Floor<br>Phoenix, AZ 85004<br>kblakley@gblaw.com<br>Attorneys for Arizona Labor Force, Inc. |
| 6 | Mark L. Collins<br>Gerard R. O'Meara<br>GUST ROSENFELD, P.L.C.<br>One S. Church Avenue, Suite 1900<br>Tucson, AZ 85701-1627<br>mcollins@gustlaw.com<br>Attorneys for Tapestry Properties, III, LLC | Sally M. Darcy<br>McEVOY, DANIELS & DARCY, P.C.<br>4560 E. Camp Lowell Drive<br>Tucson, AZ 85712-3854<br>darcysm@aol.com<br>Attorneys for Official Committee of Unsecured Creditors |
| 10 | Neal A. Eckel<br>DURAZZO & ECKEL, P.C.<br>45 N. Tucson Blvd.<br>Tucson, AZ 85716<br>neal@durazzo-eckel.com<br>Attorneys for Amanti Electric, Inc. | Denise Faulk<br>Office of the Arizona Attorney General<br>400 W. Congress Street, #N0223<br>Tucson, AZ 85701-1367<br>Denise.Faulk@azbar.org<br>Attorneys for Arizona Department of Revenue |
| 14 | Jeffrey H. Greenberg<br>STUBBS & SCHUBART, P.C.<br>PO Box 50547<br>Tucson, AZ 85703-0547<br>jgreenberg@StubbsSchubart.com<br>Attorneys for Courtland Gettel | Alan M. Levinsky<br>BUCHALTER NEMER<br>16435 N. Scottsdale Road, #440<br>Scottsdale, AZ 85254<br>alevinsky@buchalter.com<br>Attorneys for Ford Motor Credit Company, LLC |
| 18 | Terri A. Roberts<br>German Yusufov<br>PIMA COUNTY ATTORNEY'S OFFICE<br>32 N. Stone Avenue, Suite 2100<br>Tucson, AZ 85701<br>Terri.roberts@pcao.pima.gov<br>Attorneys for Pima County | Thomas P. Sarb<br>ecfsarbt@millerjohnson.com<br>Attorneys for Sally Phinny |
| 22 | Robert J. Spurlock<br>BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.<br>2901 N. Central Avenue, Suite 100<br>Phoenix, AZ 85012<br>bspurlock@bffb.com<br>Attorneys for Deere & Company | Daniel R. Warner<br>LAW OFFICES OF J. PHILLIP GLASSCOCK, P.C.<br>13430 N. Scottsdale Road, Suite 106<br>Scottsdale, AZ 85254<br>drw@jpglaw.com<br>Attorneys for Mobile Mini, Inc. |
| 26 | Stephen M. Weeks<br>WEEKS & LAIRD, PLLC<br>2223 E. Speedway Blvd.<br>Tucson, AZ 85719 | |

5255594.5

Weeks@WeeksLaird.com
Attorneys for Steven Blomquist, Timothy Blowers, Theresa Chamberlain, and Sharyl Cummings

I further certify service has been made by U.S. mail upon:

Linda Boyle
10475 Park Meadows Drive, Suite 400
Littleton, CO 80124
Representing TW Telecom, Inc.

*s/ Kathi Turnbull*

5255594.5